IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., | CIVIL ACTION |
| Plaintiff, | NO.: 02-CV-3600 |
| v. | |
| PENN TREATY AMERICA CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS COUNTS ONE AND THREE OF THE COMPLAINT**

**I.      INTRODUCTION**

Plaintiff's complaint in this action involves nothing more than straight forward breach of contract claims. In October 1999, plaintiff and defendant Penn Treaty Network America Insurance Company ("PTNA") entered into an agreement to jointly market a product to elderly people that would provide them with discounts on a variety of healthcare-related services. Soon thereafter the parties entered into a promissory note under which PTNA agreed to advance funds to plaintiff in part to assist plaintiff in fulfilling its obligations under the agreement. Plaintiff alleges that defendants breached both the agreement and promissory note by terminating them without cause. Defendants do not seek dismissal of plaintiff's breach of contract claims in this motion.

Defendants do, however, seek dismissal of plaintiff's tort claims, for fraud and misappropriation, which are nothing more than reiterations of the breach of contract claims. Under Pennsylvania's "gist of the action doctrine," a party to a contract "cannot disrupt the

- 2 -

expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement in question." Factory Market, Inc. v. Schuller Int'l Inc., 987 F. Supp. 387, 394 (E.D. Pa. 1998). Yet, this is exactly what plaintiff has tried to do here, undoubtedly to open the door to a punitive damages claim. Plaintiff alleges no facts – other than those that form the basis of its breach of contract claims – to support its tort claims. For plaintiff's tort claims to survive under the gist of the action doctrine, however, the contract claims must be "collateral" to the tort claims, not the other way around. The Court should therefore dismiss plaintiff's fraud and misappropriation claims.

## II.      STATEMENT OF FACTS[1]

Defendant Penn Treaty American Corporation ("Penn Treaty") is a corporation engaged in the business of owning and managing insurance companies. (Complaint, ¶ 3.) Defendant PTNA is a subsidiary of Penn Treaty and is engaged in the business of issuing insurance policies nationwide, including long-term care policies. (Id., ¶ 4.) In 1999, representatives of plaintiff National Healthcare Services, Inc. ("NHCS") approached Penn Treaty to seek assistance in marketing a benefits program conceived of by NHCS and designed to offer elderly people discounts on a variety of healthcare-related services. (Id., ¶¶ 13, 14.)

On October 21, 1999, PTNA and NHCS entered into an agreement ("Agreement"), which provided for the "shared development, marketing and sale of the Benefits Program (the "Venture")." (Complaint, Exhibit B, p. 1.) As provided in the Agreement, the Benefits Program would be sold through agents affiliated with both NHCS and PTNA and be

---

[1]     Pursuant to Fed. R. Civ. P. 12(b)(6), defendants accept the well-pleaded factual allegations of the Complaint (but not its legal conclusions) as true for purposes of this motion.

- 2 -

jointly marketed by NHCS and PTNA. (Id., Exhibit B, ¶¶ 1.2, 1.3.) At the time of the Agreement, a name had not yet been designated for the Benefits Program, and the parties agreed that once selected the name would become the property of their joint venture:

> <u>1.5 Trademarks, Service-marks and Logos:</u>
>
> <u>1.5.2</u>   The parties agree that upon agreement by the parties of a name for the Benefit Program (i) any related products, and any variant of the foregoing, and all related symbols, trademarks and service marks shall be the sole and exclusive property of the Venture, and (ii) PTNA shall file service mark registration of the name, and all such related designs and logos.
>
> <u>1.5.3</u>   Upon the expiration or termination of this Agreement pursuant to Section 6.2. herein, it is agreed that both parties shall immediately cease from using the Benefit Program name(s), related products, and any variant of the foregoing, and all related symbols, trademarks and service marks to bind or issue any further Benefit Programs. Pursuant to Section 6.6 herein, the parties may continue to use such names, marks, logos and designs in order to perform duties with respect to the business produced prior to the expiration or termination, until all such obligations on the part of both parties have been fully satisfied.

(Id., Exhibit B, Section 1.5.)[2]  At some point thereafter, the Benefit Program was given the name AllRisk Healthcare ("AllRisk").

The Agreement was set to expire on December 31, 2005. (Id., Exhibit B, Section 6.1.) Either party, however, had the right to terminate the Agreement prior to that date in the event of the "sale of all or substantially all of the assets of, the merger or transfer of a majority of the voting stock of, or a material change in the management of one party which has not been approved in writing by the other party . . . ." (Id., Exhibit B, ¶ 6.2.3.) During the term of the

---

[2]   Certain terms of the Agreement were modified by letter agreement, dated June 8, 2000. (Complaint, ¶ 30 & Exhibit F.) The parties agreed to an additional modification of the Agreement in a letter dated August 21, 2000, but such modification was never documented as the parties intended in a new contract. (Complaint, ¶¶ 31, 32 & Exhibit G.)

Agreement and for one year following its termination, neither party could offer a competing product. (Id., Exhibit B, ¶ 1.4.) In a letter agreement dated August 21, 2000, the parties agreed to modify the original Agreement so that AllRisk would be marketed not by PTNA, but by another wholly owned subsidiary of Penn Treaty, defendant Senior Financial Consultants Company ("SFCC"). (Id., Exhibit G.)

On January 11, 2000, PTNA and NHCS entered into a separate agreement (the "Promissory Note"), whereby PTNA agreed to advance funds to NHCS to assist it in fulfilling its obligations under the Agreement. (Id., ¶¶ 26, 27 & Exhibit E.) The Promissory Note was personally guaranteed, in part, by NHCS's principals, Herbert E. Schwartz and Neil A. Forman. (Id., ¶ 26.) PTNA ultimately advanced NHCS $125,000 under the Promissory Note. (Id., ¶ 27.)

Defendants commenced the roll-out of AllRisk in February 2000. (Id., ¶ 28.) At some point thereafter, defendants discovered that there had been a "material change in the management of National Healthcare Services, Inc." and on November 5, 2001 terminated the Agreement as permitted under paragraph 6.2.3. (Id., ¶ 48 & Exhibit J.) Defendants then advised their sales agents that they would "no longer be marketing AllRisk Healthcare, our non-insurance discount savings product." (Id., ¶ 49 & Exhibit K.) The Complaint does not allege that defendants have continued to market AllRisk or any similar product since the termination of the Agreement.

On December 5, 2001, PTNA commenced an action in the Court of Common Pleas of Lehigh County against NHCS and Messrs. Schwartz and Forman to enforce the terms of the Promissory Note. (Id., ¶¶ 51, 55 & Exhibit L.) PTNA alleged in that action that NHCS had failed to make the monthly payments of principal and interest required by the Promissory Note and had therefore defaulted. (Id., Exhibit L, ¶ 22.) After removing that action to this Court,

NHCS and Messrs. Schwartz and Forman ultimately agreed in a Consent Order and Judgment signed by the parties and approved by the Court to have judgment entered against them in the amount of $87,607, the total outstanding balance on the Note. (Id., ¶ 55 & Exhibit N.) The Consent Order further provided that the parties would litigate disputes arising under the Agreement as a related action in this Court. (Id.)

Plaintiff NHCS commenced the present action on June 5, 2002. The gist of the allegations of the Complaint is that defendants breached both the Agreement and the Promissory Note. (Id., ¶¶ 63-68.) In Count Two of the Complaint for breach of contract, NHCS alleges that defendants violated the Agreement by terminating it on account of a material change in the management at NHCS. (Id., ¶ 65.) NHCS further alleges that defendants breached the provisions of the Promissory Note by refusing to continue to make advances. (Id., ¶ 67.) In addition to the breach of contract claim, NHCS has tacked on two tort claims for fraud (Count One) and misappropriation (Count Three). Because these tort claims are simply reiterations of the breach of contract claims, they are subject to dismissal under the gist of the action doctrine.

### III.   ARGUMENT

"Under Pennsylvania law, when the tort involves actions arising from a contractual relationship, the plaintiff is limited to an action under the contract." Horizon Unlimited v. Silva, Civ. A. No. 97-7430, 1998 WL 88391, at *5 (E.D. Pa. Feb. 26, 1998). Moreover, "a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly." Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663 A.2d 753, 757 (Pa. Super. 1995). See also Haymond v. Lundy, Civ. A. Nos. 99-5015 & 99-5048, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000) ("If rights are specified by a contract, one cannot ordinarily recover in contract for breach and in tort arising from the same

performance or non performance under the contract."). "To proceed in tort, the wrong ascribed to the defendant must be the gist of the action, and the contract collateral." Haymond, 2000 WL 804432, at *8.

Applying this standard, federal and state courts in this jurisdiction regularly dismiss tort claims based on an alleged breach of contract. See USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 439 (3d Cir. 1993) (affirming dismissal of misrepresentation claim as "impermissible attempt to convert a contract claim into a tort claim"); Haymond, 2000 WL 804432, at *8 (dismissing tort claim where the "gist of the action is a breach of contract, not anything else"); Horizon, 1998 WL 88391, at *6 (dismissing tort claim where contract was "integral, not collateral, to the alleged fraud and deceit"); Factory Market, Inc. v. Schuller Int'l Inc., 987 F. Supp 387, 394-95 (E.D. Pa. 1998) (dismissing plaintiff's fraud claim that was "simply another way of stating its claim for breach of contract"); The Flynn Co. v. Peerless Door & Glass, Inc., Civ. A. No. 0830 Nov. Term 2001, 2002 WL 1018937, at *3 (Pa. Com. Pls. May 15, 2002) (dismissing tort claims where complaint alleging "fraud is merely a reiteration, albeit in fraud terms, of defendants' purportedly tortious wrongs").

The Factory Market case illustrates why the gist of the action doctrine requires dismissal of plaintiff's tort claims. That case arose out of defendant's installation and maintenance of a water-proofing system on plaintiff's roof. 987 F. Supp. at 394-95. In order to settle litigation between the parties relating to the ineffectiveness of the system, defendant agreed to pay for and supervise repairs sufficient to render the roofing system watertight. Id. at 395. In the negotiations leading up to the settlement, defendant repeatedly assured plaintiff that the "repairs would render the building watertight and alleviate any need for constant repairs" and that its technical staff, which had investigated the roof, was certain of this. Id. at 390. Plaintiff

- 6 -

stated that but for these representations, it would not have agreed to the settlement.  Id.  When the repairs proved ineffective, plaintiff sued defendant, alleging not only that defendant had breached the agreement and guarantees made therein, but also that it had been negligent in making the repairs and had committed a fraud in stating that the repairs would be sufficient despite knowing "at the time it signed the Settlement Agreement that only the replacement of the entire roofing system would make the entire roofing system watertight."  Id. at 395.

Applying the gist of the action doctrine, the court dismissed both the negligence and fraud claims.  Id. at 394-95.  With respect to the fraud claim, the court concluded that "the allegations set forth in plaintiff's fraud count, and reiterated in its brief, are simply another way of stating its claim for breach of contract."  Id. at 395.  The court further explained:

> The breach of contract claims center around the argument that [defendant] breached the contracts by failing to repair the roofing system to ensure that [plaintiff] had a watertight roof.  [Plaintiff's] contention to make the roof watertight, through repairs if necessary, arises directly out of the contract dispute.  [Plaintiff's] claim that [defendant] misrepresented the fact that its repairs would make the roof watertight are so intertwined with the obligations that flow from the Guarantees, the Court cannot find that the Guarantees are collateral to plaintiff's fraud count.  Thus, the Court concludes that plaintiff's fraud claim more properly sounds in contract than in tort; thus, Count IV of plaintiff's complaint is dismissed.

Id.

Plaintiff's fraud and misappropriation claims in the present matter similarly "arise directly out of the contract dispute."  Indeed, it is difficult even to distinguish plaintiff's tort claims from its breach of contract claims, as a simple comparison of the various allegations supporting each claim makes clear.  In support of its breach of contract claim, plaintiff alleges:

> 65.    Penn Treaty, PTNA and SFCC breached the Agreement by falsely and improperly claiming that there had been an unauthorized change of control within NHCS.

- 7 -

> 66. At no time did Penn Treaty, PTNA and SFCC provide NHCS any fair notice of any alleged breach or any meaningful opportunity to cure any alleged breach.
>
> 67. Additionally, Penn Treaty, PTNA and SFCC breached the Promissory Note by wrongfully and without justification refusing to advance monies due under the Promissory Note.

(Complaint, ¶¶ 65-67.)

The gist of plaintiff's fraud claim is the same. Plaintiff essentially alleges that defendants committed a fraud by breaching the Agreement and the Promissory Note (or by entering into those agreements while knowing they would eventually breach them) and then seeking to enforce the terms of the Promissory Note. There is no alleged misrepresentation or omission or other independent basis for the fraud claim, which plaintiff summarizes in the following paragraphs of the Complaint:

> 58. In furtherance of that scheme and artifice to defraud, Penn Treaty, PTNA and SFCC intentionally and maliciously failed and refused to provide to NHCS additional advances of monies under the Promissory Note when, in truth and in fact, as Penn Treaty, PTNA and SFCC then and there well knew, Penn Treaty, PTNA and SFCC were contractually required to continue to fund the sums due under the Promissory Note to an aggregate of $300,000.00.
>
> 59. Also in furtherance of that scheme and artifice to defraud, Penn Treaty, PTNA and SFCC claimed a termination of the Agreement with NHCS when, in truth and in fact, as Penn Treaty, PTNA and SFCC then and there well knew, there was no basis for any claimed termination of the Agreement and such claim was made solely as a pretext to defraud NHCS.
>
> 60. Also in furtherance of that scheme and artifice to defraud, Penn Treaty, PTNA and SFCC filed a lawsuit seeking recovery of the amounts outstanding under the Promissory Note when, in truth and in fact, as Penn Treaty, PTNA and SFCC then and there well knew, such lawsuit was filed solely for the purpose of exerting improper pressure on NHCS.

(Complaint, ¶¶ 58-60.)

PH1644735v1

As for plaintiff's misappropriation claim, there are no factual allegations whatsoever to support it, other than the conclusory statement that defendants "sought to misappropriate NHCS's 'AllRisk Healthcare' program for their own benefit and to the exclusion of NHCS." (Complaint, ¶ 72.) Nowhere does plaintiff allege that defendants have done anything, other than entering into and then breaching the Agreement and Promissory Note, to "misappropriate" the AllRisk Healthcare program. There is not even an allegation that defendants violated the specific provisions of the Agreement that govern the use of the AllRisk Healthcare mark or that they have sought to profit from it to the exclusion of plaintiff since the termination of the Agreement. (See Complaint, Exhibit B, Sections 1.4. & 1.5.) But even were there such allegations, they would not take the misappropriation claim out of the ambit of the breach of contract claim since the contract clearly governs issues relating to the ownership and use of the AllRisk mark and product as well as the parties' ability to market competing products. (See id.)

There is no conceivable interpretation of the foregoing allegations that could support a finding that the gist of plaintiff's claims lie in tort, with the contract claims being collateral. There would be no tort claims in the absence of the parties' contractual relationship, and the same alleged wrongful conduct forms the basis of both claims. It is clear that plaintiff has simply recast its breach of contract claims as tort claims so that it can seek punitive damages, a stratagem courts have specifically condemned. See USX Corp., 988 F.2d at 439. Because plaintiff's tort claims in Counts One and Three of the Complaint "are so intertwined with the obligations that flow" from the Agreement and Promissory Note, they should be dismissed under the gist of the action doctrine. Factory Market, 987 F. Supp. at 395.

## IV. <u>**CONCLUSION**</u>

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss Counts One and Three of the Complaint.

 

_____
Geoffrey A. Kahn
Douglas L. Flitter
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
Philadelphia, PA  19103
(215) 665-8500

Attorneys for Defendants

Dated:  July 29, 2002

CERTIFICATE OF SERVICE

I hereby certify that I have this day served true and correct copies of the motion of defendants to dismiss Counts One and Three of the Complaint and the accompanying memorandum of law by hand delivery upon:

> Roberto A. Rivera-Soto, Esq.
> Fox Rothschild O'Brien & Frankel LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103

Dated: July 29, 2002                                    _____

                                                        Douglas L. Flitter

PH1644735v1