IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., | CIVIL ACTION |
| Plaintiff, | NO.: 02-CV-3600 |
| v. | |
| PENN TREATY AMERICA CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS COUNT TWO OF THE AMENDED COMPLAINT**

**I.   INTRODUCTION**

In their motion to dismiss the fraud and misappropriation claims in the original complaint, defendants raised a discrete legal issue: that those tort claims simply restated the breach of contract claims and were thus barred under the gist of the action doctrine. Rather than respond, plaintiff filed an amended complaint, which dropped the fraud claim. Plaintiff, however, retained the misappropriation claim, even though its suffers from the same defect.

Defendants thus renew their motion to dismiss the misappropriation claim, for the amended complaint, like the original one, involves nothing more than straightforward breach of contract claims. In October 1999, plaintiff and defendant Penn Treaty Network America Insurance Company ("PTNA") entered into an agreement to jointly market a product that would provide people with discounts on a variety of healthcare-related services. Soon thereafter the parties entered into a promissory note under which PTNA agreed to advance funds to plaintiff to assist plaintiff in fulfilling its obligations under the agreement. Plaintiff alleges that defendants

- 2 -

breached both the agreement and promissory note by terminating them without cause. Defendants do not seek dismissal of plaintiff's breach of contract claims in this motion.

Plaintiff's tort claim, however, is subject to dismissal because it is based on nothing more than the same allegations that support plaintiff's breach of contract claims – namely, that defendants "misappropriated" the discount product by failing to fulfill their obligations under the agreement. Not only does such an allegation fail as a matter of law to state a misappropriation claim, the claim is also barred under Pennsylvania's "gist of the action doctrine." Under that doctrine, a party to a contract "cannot disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement in question." Factory Market, Inc. v. Schuller Int'l Inc., 987 F. Supp. 387, 394 (E.D. Pa. 1997). Yet, this is exactly what plaintiff has tried to do here, undoubtedly to open the door to a punitive damages claim. Plaintiff alleges no facts – other than those that form the basis of its breach of contract claims – to support its tort claim. For plaintiff's tort claim to survive under the gist of the action doctrine, however, the contract claims must be "collateral" to the tort claims, not the other way around. The Court should therefore dismiss plaintiff's misappropriation claim.

## II. STATEMENT OF FACTS[1]

Defendant Penn Treaty American Corporation ("Penn Treaty") is a corporation engaged in the business of owning and managing insurance companies. (Amended Complaint, ¶ 3.) Defendant PTNA is a subsidiary of Penn Treaty and is engaged in the business of issuing

---

[1] Pursuant to Fed. R. Civ. P. 12(b)(6), defendants accept the well-pleaded factual allegations of the amended complaint (but not its legal conclusions) as true for purposes of this motion.

PH1659279v2

insurance policies nationwide, including long-term care policies.  (Id., ¶ 4.)  In 1999, representatives of plaintiff National Healthcare Services, Inc. ("NHCS") approached Penn Treaty to seek assistance in marketing a benefits program conceived of by NHCS and designed to offer elderly people discounts on a variety of healthcare-related services.  (Id., ¶¶ 13, 14, 17.)

On October 21, 1999, PTNA and NHCS entered into an agreement ("Agreement"), which provided for the "shared development, marketing and sale of the Benefits Program (the "Venture")."  (Amended Complaint, Exhibit B, p. 1.)  As provided in the Agreement, the Benefits Program would be sold through agents affiliated with both NHCS and PTNA and be jointly marketed by NHCS and PTNA.  (Id., Exhibit B, ¶¶ 1.2, 1.3.)  At the time of the Agreement, a name had not yet been designated for the Benefits Program, and the parties agreed that once selected the name and product would become the property of their joint venture:

> 1.5 Trademarks, Service-marks and Logos:
>
> 1.5.2   The parties agree that upon agreement by the parties of a name for the Benefit Program (i) any related products, and any variant of the foregoing, and all related symbols, trademarks and service marks shall be the sole and exclusive property of the Venture, and (ii) PTNA shall file for service mark registration of the name, and all such related designs and logos.
>
> 1.5.3   Upon the expiration or termination of this Agreement pursuant to Section 6.2. herein, it is agreed that both parties shall immediately cease from using the Benefit Program name(s), related products, and any variant of the foregoing, and all related symbols, trademarks and service marks to bind or issue any further Benefit Programs.  Pursuant to Section 6.6 herein, the parties may continue to use such names, marks, logos and designs in order to perform duties with respect to the business produced prior to the expiration or termination, until all such obligations on the part of both parties have been fully satisfied.

(Id., Exhibit B, Section 1.5.)[2]  At some point thereafter, the Benefit Program was given the name AllRisk Healthcare ("AllRisk").

The Agreement was set to expire on December 31, 2005.  (Id., Exhibit B, Section 6.1.)  Either party, however, had the right to terminate the Agreement prior to that date in the event of the "sale of all or substantially all of the assets of, the merger or transfer of a majority of the voting stock of, or a material change in the management of one party which has not been approved in writing by the other party . . . ."  (Id., Exhibit B, ¶ 6.2.3.)  During the term of the Agreement and for one year following its termination, neither party could offer a competing product.  (Id., Exhibit B, ¶ 1.4.)  In a letter agreement dated August 21, 2000, the parties agreed to modify the original Agreement so that AllRisk would be marketed not by PTNA, but by another wholly owned subsidiary of Penn Treaty, defendant Senior Financial Consultants Company ("SFCC").  (Id., Exhibit G.)

On January 11, 2000, PTNA and NHCS entered into a separate agreement (the "Promissory Note"), whereby PTNA agreed to advance funds to NHCS to assist it in fulfilling its obligations under the Agreement.  (Id., ¶¶ 26, 27 & Exhibit E.)  The Promissory Note was personally guaranteed, in part, by NHCS's principals, Herbert E. Schwartz and Neil A. Forman.  (Id., ¶ 26.)  PTNA ultimately advanced NHCS $125,000 under the Promissory Note.  (Id., ¶ 27.)

Defendants commenced the roll-out of AllRisk in February 2000.  (Id., ¶ 28.)  At some point thereafter, defendants discovered that there had been a "material change in the management of National Healthcare Services, Inc." and on November 5, 2001 terminated the

---

[2]  Certain terms of the Agreement were modified by letter agreement, dated June 8, 2000. (Amended Complaint, ¶ 30 & Exhibit F.)  The parties agreed to an additional modification of the Agreement in a letter dated August 21, 2000, but such modification was never documented as the parties intended in a new contract.  (Amended Complaint, ¶¶ 31, 32 & Exhibit G.)

- 4 -

Agreement as permitted under paragraph 6.2.3.  (Id., ¶ 48 & Exhibit J.)  Defendants then advised their sales agents that they would "no longer be marketing AllRisk Healthcare, our non-insurance discount savings product."  (Id., ¶ 49 & Exhibit K.)  The Complaint does not and cannot allege that defendants have continued to market AllRisk or any similar product since the termination of the Agreement.

On December 5, 2001, PTNA commenced an action in the Court of Common Pleas of Lehigh County against NHCS and Messrs. Schwartz and Forman to enforce the terms of the Promissory Note.  (Id., ¶¶ 51, 55 & Exhibit L.)  PTNA alleged in that action that NHCS had failed to make the monthly payments of principal and interest required by the Promissory Note and had therefore defaulted.  (Id., Exhibit L, ¶ 22.)  After removing that action to this Court, NHCS and Messrs. Schwartz and Forman ultimately agreed in a Consent Order and Judgment signed by the parties and approved by the Court to have judgment entered against them in the amount of $87,607, the total outstanding balance on the Note.  (Id., ¶ 55 & Exhibit N.)  The Consent Order further provided that the parties would litigate disputes arising under the Agreement as a related action in this Court.  (Id.)

Plaintiff NHCS commenced the present action on June 5, 2002 with the filing of the original complaint, which asserted claims of breach of contract, fraud, and misappropriation.  On July 30, 2002, defendants moved to dismiss the fraud and misappropriation claims on the ground that these tort claims were nothing but reiterations of the breach of contract claims and thus barred under Pennsylvania's gist of the action doctrine.  Rather than respond to the motion to dismiss, plaintiff filed an amended complaint on August 12, 2002, which dropped the fraud claim but retained the misappropriation claim.  On August 22, 2002, the Court denied

- 5 -

defendants' motion to dismiss the tort claims of the original complaint as moot, without prejudice to renew the motion as to the amended complaint.

The gist of the allegations of the amended complaint remains that defendants breached both the Agreement and the Promissory Note. (Id., ¶¶ 58-60.) In Count One of the amended complaint for breach of contract, NHCS alleges that defendants violated the Agreement by terminating it on account of a material change in the management at NHCS. (Id., ¶ 58.) NHCS further alleges that defendants breached the provisions of the Promissory Note by refusing to continue to make advances. (Id., ¶ 60.) Based on the same allegations, NHCS alleges in Count Two that defendants misappropriated the AllRisk product. Because NHCS has failed to allege any basis for the misappropriation claim other than the same allegations that form the basis of the breach of contract claims, the misappropriation claim is subject to dismissal under the gist of the action doctrine and, in any event, fails to state a claim as a matter of law.

## III. ARGUMENT

### A. The Misappropriation Claim is Barred by the Gist of the Action Doctrine

"Under Pennsylvania law, when the tort involves actions arising from a contractual relationship, the plaintiff is limited to an action under the contract." Horizon Unlimited, Inc. v. Silva, Civ. A. No. 97-7430, 1998 WL 88391, at *5 (E.D. Pa. Feb. 26, 1998). Moreover, "a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly." Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663 A.2d 753, 757 (Pa. Super. 1995). See also Haymond v. Lundy, Civ. A. Nos. 99-5015 & 99-5048, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000) ("If rights are specified by a contract, one cannot ordinarily recover in contract for breach and in tort arising from the same performance or non performance under the contract."). "To proceed in tort, the wrong ascribed to

the defendant must be the gist of the action, and the contract collateral." Haymond, 2000 WL 804432, at *8.

Applying this standard, federal and state courts in this jurisdiction routinely dismiss tort claims based on an alleged breach of contract. See Yocca v. The Pittsburgh Steelers Sports, Inc., -- A.2d --, No. 119 C.D. 2002, 2002 WL 1972925 (Pa. Cmwlth. Aug. 28, 2002) (affirming dismissal of tort claim, where it was "based on precisely the same conduct that Plaintiffs assert is a breach of the contract, and the duties that Defendants are accused of violating arise, if at all, only because the parties entered into a contract"); USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 439 (3d Cir. 1993) (affirming dismissal of misrepresentation claim as "impermissible attempt to convert a contract claim into a tort claim"); Werner Kammann Maschinefabrik, Gmbh. v. Max Levy Autograph, Inc., Civ. A. No. 01-1083, 2002 WL 126634, at *6 (E.D. Pa. Jan. 31, 2002) (dismissing tort claims where "duties allegedly breached were created and grounded in the contract itself. A mere allegation of fraud and negligence is insufficient to create a distinct tort remedy"); Haymond, 2000 WL 804432, at *8 (dismissing tort claim where the "gist of the action is a breach of contract, not anything else"); Horizon, 1998 WL 88391, at *6 (dismissing tort claim where contract was "integral, not collateral, to the alleged fraud and deceit"); Factory Market, Inc. v. Schuller Int'l Inc., 987 F. Supp 387, 394-95 (E.D. Pa. 1998) (dismissing plaintiff's fraud claim that was "simply another way of stating its claim for breach of contract"); The Flynn Co. v. Peerless Door & Glass, Inc., Civ. A. No. 0830 Nov. Term 2001, 2002 WL 1018937, at *3 (Pa. Com. Pls. May 15, 2002) (dismissing tort claims where complaint alleging "fraud is merely a reiteration, albeit in fraud terms, of defendants' purportedly tortious wrongs").

PH1659279v2

The Factory Market case illustrates why the gist of the action doctrine requires dismissal of plaintiff's tort claims. That case arose out of the defendant's installation and maintenance of a water-proofing system on the plaintiff's roof. 987 F. Supp. at 394-95. In order to settle litigation between the parties relating to the ineffectiveness of the system, the defendant agreed to pay for and supervise repairs sufficient to render the roofing system watertight. Id. at 395. In the negotiations leading up to the settlement, the defendant repeatedly assured the plaintiff that the "repairs would render the building watertight and alleviate any need for constant repairs" and that its technical staff, which had investigated the roof, was certain of this. Id. at 390. The plaintiff stated that but for these representations, it would not have agreed to the settlement. Id. When the repairs proved ineffective, the plaintiff sued, alleging not only that the defendant had breached the agreement and guarantees made therein, but also that it had been negligent in making the repairs and had committed a fraud in stating that the repairs would be sufficient despite knowing "at the time it signed the Settlement Agreement that only the replacement of the entire roofing system would make the entire roofing system watertight." Id. at 395.

Applying the gist of the action doctrine, the court dismissed both the negligence and fraud claims. Id. at 394-95. With respect to the fraud claim, the court concluded that "the allegations set forth in plaintiff's fraud count, and reiterated in its brief, are simply another way of stating its claim for breach of contract." Id. at 395. The court further explained:

> The breach of contract claims center around the argument that [defendant] breached the contracts by failing to repair the roofing system to ensure that [plaintiff] had a watertight roof. [Plaintiff's] contention to make the roof watertight, through repairs if necessary, arises directly out of the contract dispute. [Plaintiff's] claim that [defendant] misrepresented the fact that its repairs would make the roof watertight are so intertwined with the obligations that flow from the Guarantees, the Court cannot find

- 8 -

>that the Guarantees are collateral to plaintiff's fraud count. Thus, the Court concludes that plaintiff's fraud claim more properly sounds in contract than in tort; thus, Count IV of plaintiff's complaint is dismissed.

Id. The court further dismissed the negligence claim, where "it is this very same claim – that [defendant] has failed to make the roofing system watertight – that forms the basis of plaintiff's breach of contract counts." Id. at 395.

In Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., the Third Circuit recently applied the gist of the action doctrine to bar misappropriation claims in a situation similar to the one presented here. 247 F.3d 79 (3d Cir. 2001), cert. denied, 122 S. Ct. 1173 (2002). That case also arose out of a joint venture, with one party to the agreement alleging the other had misappropriated its trade secrets. Id. at 106. The Third Circuit held that to the extent the agreement between the parties governed the use of the allegedly misappropriated information, the misappropriation claim was barred under the gist of the action doctrine. Id.; see also Barbiarz v. Bell Atlantic-Penna., Inc., Civ. A. No. 1863 Aug. Term 2000, 2001 WL 1808554, at *10 (Pa. Com. Pls. July 10, 2001) (dismissing misappropriation claim where "plaintiff's redress is more properly addressed by contract or quasi-contract principles"), reconsideration granted on other grounds, 2001 WL 1807378 (Pa. Com. Pls. Nov. 20, 2001).

The same principles require dismissal of plaintiff's misappropriation claim in the present matter, for it too "arises directly out of the contract dispute" and is controlled by the terms of the Agreement. Indeed, there are no factual allegations to support the misappropriation claim, other than the conclusory statement that defendants "misappropriated NHCS's 'AllRisk Healthcare' program, at little or no cost to [defendants], for their own benefit and to the exclusion of NHCS." (Amended Complaint, ¶ 66.) Nowhere does plaintiff allege that defendants have done anything, other than entering into and then breaching the Agreement and

Promissory Note, to "misappropriate" the AllRisk Healthcare program. There is not even an allegation that defendants violated the specific provisions of the Agreement that govern the use of the AllRisk Healthcare mark or that they have sought to profit from it to the exclusion of plaintiff since the termination of the Agreement. (See Amended Complaint, Exhibit B, Sections 1.4. & 1.5.) Nor is there any allegation that defendants have profited from a similar product in violation of the non-compete provisions of the Agreement. (See id., Exhibit B, Section 1.4.) But even were there such allegations, they would not take the misappropriation claim out of the ambit of the breach of contract claim since the contract clearly governs issues relating to the ownership and use of the AllRisk mark and product as well as the parties' ability to market competing products. (See id., Exhibit B, Sections 1.4 & 1.5.)

There is no conceivable interpretation of the foregoing allegations that could support a finding that the gist of plaintiff's misappropriation claim lies in tort, with the contract claims being collateral. There would be no misappropriation claim in the absence of the parties' contractual relationship, and the same alleged wrongful conduct forms the basis of both claims. It is clear that plaintiff has simply recast its breach of contract claims as a tort claim so that it can seek punitive damages, a stratagem courts have specifically condemned. See USX Corp., 988 F.2d at 439. Because plaintiff's misappropriation claim in Count Two of the amended complaint is "so intertwined with the obligations that flow" from the Agreement and Promissory Note, it should be dismissed under the gist of the action doctrine. Factory Market, 987 F. Supp. at 395.

**B.     Plaintiff Has Failed to State a Misappropriation Claim as a Matter of Law**

In the absence of any allegations to support its misappropriation claim – other than the alleged breach of the Agreement and Promissory Note – plaintiff has also failed to state such a claim as a matter of law. The Pennsylvania Superior Court has held that the tort of misappropriation has the following three elements:

PH1659279v2

> (1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right, (2) the defendant has appropriated the 'thing' at little or no cost, such that the court can characterize the defendant's actions as reaping where it has not sown, and (3) the defendant has injured plaintiff by the misappropriation.

Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 716 (Pa. Super. 1999) (citing Lebas Fashion Imports of USA v. ITT Hartford Ins. Group, 50 Cal. App.4th 548, 561, 59 Cal. Rptr.2d 36, 43 (1996)). See also Macario v. Pratt & Whitney Canada, Inc., Civ. A. No. 903906, 1993 WL 39317, at *5 (E.D. Pa. Feb. 12, 1993) ("misappropriation occurs when a property right belonging to one person is used to benefit another").

The touchstone of a misappropriation claim is, of course, "[t]he unauthorized, improper, or unlawful use of funds or other property for [a] purpose other than that for which [it was] intended." Barbiarz, 2001 WL 1808554, at *8 (internal quotation omitted). It is here that plaintiff's misappropriation claim primarily fails, for the amended complaint does not and cannot allege that defendants ever engaged in the "unauthorized, improper, or unlawful use" of the AllRisk product. On the contrary, it is apparent from the amended complaint that defendants' marketing of the AllRisk product was at all times pursuant to the Agreement to which both parties agreed, and there is no allegation that their use ever went beyond the terms of the Agreement. In fact, plaintiff seems more upset with the alleged failure of defendants to market the product vigorously than with any unauthorized use. Yet, as noted above, defendants' alleged failure to perform its obligations under the Agreement states a claim for breach of contract, not misappropriation.

A recent Pennsylvania case, Barbiarz v. Bell Atlantic-Pennsylvania, illustrates this point precisely. In that case, the plaintiff, an employee of the defendant, conceived of a product and then voluntarily shared the product with his employer pursuant to the terms of an

- 11 -

PH1659279v2

- 12 -

incentive program. Id., 2001 WL 1808554, at *6, 10. Under the program, the plaintiff expected to be compensated in the event the defendant decided to use it. Id. The plaintiff alleged that the defendant misappropriated his product by giving credit for it to another employee and failing to compensate him for it. Id. at *10. The Court granted the defendant's motion to dismiss, holding that the plaintiff's voluntary provision of the product to the defendant pursuant to the incentive program "negate[s] the essential requirement that defendants somehow 'misappropriated' property belonging to the plaintiff . . . ." Id. at *8. The Court went on to conclude that "plaintiff's redress is more properly addressed by contract or quasi-contract principles." Id. at *10.

For the same reasons, the Court should dismiss plaintiff's misappropriation claim here. There is no allegation in the amended complaint that defendants actually "misappropriated" the AllRisk product. Rather, the product was presented to them for use in a joint venture, ultimately documented in the Agreement that clearly governs the mutual rights of the parties with respect to use of the product. While plaintiff claims to be dissatisfied with defendants' performance of the Agreement, such dissatisfaction does not state a claim of misappropriation.

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss Count Two of the amended complaint.

_____
Geoffrey A. Kahn
Douglas L. Flitter
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
Philadelphia, PA  19103
(215) 665-8500

Attorneys for Defendants

Dated:  August 29, 2002

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served true and correct copies of the motion of defendants to dismiss Count Two of the Amended Complaint and the accompanying memorandum of law by hand delivery upon:

>Roberto A. Rivera-Soto, Esq.
>Fox Rothschild O'Brien & Frankel LLP
>2000 Market Street, 10th Floor
>Philadelphia, PA  19103

Dated:  August 29, 2002                              _____
                                                                                Douglas L. Flitter