IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., | CIVIL ACTION |
| Plaintiff, | NO.: 02-CV-3600 |
| v. | |
| PENN TREATY AMERICAN CORP., et al. | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR ORDER DECLARING RIGHT TO TAKE DEPOSITIONS OF
FACT WITNESSES AND FOR PLAINTIFF TO BEAR ITS OWN COSTS**

Mindy J. Spector
David L. Yohai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
(212) 310-8000

-and-

Martin C. Bryce, Jr.
Douglas L. Flitter
BALLARD SPAHR ANDREWS &
   INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Defendants

Defendants Penn Treaty American Corporation, Penn Treaty Network America Insurance Company, and Senior Financial Consultants Company (collectively, "Penn Treaty"), respectfully move pursuant to FED. R. CIV. P. 37 for an Order declaring that (1) Penn Treaty may take depositions of third party witnesses, including but not limited to Joseph Axmann and Charles Mankamyer, as of right upon reasonable notice to plaintiff National Healthcare Services, Inc. ("National Healthcare"), and (2) plaintiff must bear its own cost incurred in connection with its preparation for, and attendance at, such depositions. National Healthcare has refused to attend or recognize the depositions of third party fact witnesses for which it has received reasonable notice and which are scheduled prior to the October 30, 2003 discovery deadline, unless Penn Treaty reimburses it for its "entire cost of attending such deposition[s]."

## STATEMENT OF FACTS

National Healthcare commenced this action arising from an alleged breach of contract relating to, and alleged misappropriation of, a failed discount healthcare benefit program called the AllRisk Healthcare program. National Healthcare's damages are based on profits that it purportedly should have realized had Penn Treaty fully performed under the agreement. See id. 61. It alleges that the AllRisk program would have generated revenues in excess of $200 million during its first five years of operations and that Penn Treaty is responsible for the program's failure to generate any of these revenues. Id.

On January 23, 2003, counsel for Penn Treaty served National Healthcare with a copy of a subpoena to, among others, Joseph Axmann ("Axmann"), Vice President of Healthcare Synergies, Inc. ("HSI"), the company chosen by National Healthcare to provide a network of certain long term health care providers in connection with the AllRisk program, in Atlanta, Georgia. See Letter from Flitter to Lyons of 1/7/03 (annexed hereto as Ex. 1).

Axmann was the key executive at HSI with knowledge about its network of providers of discount healthcare services. In April 2000, Glen Levit, President of Penn Treaty, wrote to Axmann seeking to address certain problems plaguing National Healthcare's AllRisk network including that agents were often unable to provide potential customers with specific information about discounts and that actual healthcare providers who were supposed to be offering those discounts were often unaware of the AllRisk program.

See Letter from Levit to Axmann of 4/25/00 (annexed hereto as Ex. 2). These issues continued despite good faith efforts to remedy them and were a great contributing cause to the demise of this program.[1] Axmann is in a unique position to testify as to these matters.

Shortly after the subpoena was originally sent to National Healthcare, the parties proceeded to mediation and agreed to a stay of discovery. After the mediation proved unsuccessful, with National Healthcare's consent, on September 15, 2003, counsel for Penn Treaty submitted a letter application to the Court requesting an extension of the discovery deadline from October 15, 2003 to October 30, 2003 due to "scheduling conflicts." See Letter from Yohai to the Court of 9/15/03 (annexed hereto as Ex. 4). The Court granted Penn Treaty's request and extended the discovery deadline to October 30, 2003. See Order filed September 23, 2003 (annexed hereto as Ex. 5). The Court did not limit Penn Treaty to deposing only witnesses previously noticed, nor did National Healthcare ever suggest prior to now that it would object to depositions not already noticed. In addition, there has been no deadline by which the parties were to exchange a list of fact witnesses who may be deposed.

On October 3, 2003, well before the discovery deadline, Penn Treaty served a subpoena for Axmann's testimony scheduled for more than three weeks later on October 27, 2003 in Atlanta, Georgia, and provided National Healthcare with notice of the subpoena. See Letter from Kurcias to Lyons of 10/3/03 (annexed hereto as Ex. 6). Despite its previously unqualified support of an extension of the discovery deadline, National Healthcare now seeks to prevent Penn Treaty from deposing Axmann and any other individual not previously noticed. See Letter from Rivera-Soto to Spector of 10/6/03 (annexed hereto as Ex. 7). National Healthcare asserts that it would never have consented to the extension of the discovery deadline if it had known in advance that Penn Treaty would ultimately attempt to depose a witness not "otherwise disclosed before this date." Id.

With respect to Charles Mankamyer ("Mankamyer") of American Life & Health Group, Inc., the second deponent at issue in this matter, on April 28, 2000, Mankamyer wrote a letter to Penn Treaty

---

[1] Indeed, Mr. Schwartz, one of the principals in AllRisk, testified that these issues, which were the responsibility of National Healthcare, were never fully solved and contributed to the demise of the program. See Schwartz Deposition Transcript, at pp. 139-40, 151-52 (annexed hereto as Exhibit 3).

2

that was highly critical of the AllRisk program for many of the reasons cited by others and relied on by Penn Treaty. See Letter from Mankamyer to Levit of 4/28/00 (annexed hereto as Ex. 8). In his letter, Mankamyer alleged that AllRisk was a fraud upon senior citizens as the result of National Healthcare's poor network and pricing. See id.

During the course of the deposition of another third party, Kathy Lannen, just held on October 8, 2003, National Healthcare's position regarding Mankamyer became clear for the first time. National Healthcare suggested that Mankamyer was engaged in a conspiracy to enter into a "secret deal" with Penn Treaty to replace the AllRisk program with Mankamyer's program and appeared to take the position that Mankamyer's criticism of the AllRisk program had absolutely no basis. See excerpts from the transcript of the deposition of Kathy M. Lannen (annexed hereto as Ex. 9). In light of National Healthcare's position, Penn Treaty advised National Healthcare of its intention to depose Mankamyer. As the parties proceed with discovery, other individuals may be identified whose testimony may be relevant to the issues in this case. Penn Treaty expressly reserves its right to depose those individuals within the current discovery period and to raise with the Court at the October 30, 2003 discovery conference any further depositions that would need to be taken to complete fact discovery in this matter.

Penn Treaty has attempted to mitigate any inconvenience National Healthcare might endure in having to attend depositions outside of this jurisdiction. Counsel for Penn Treaty offered to reschedule and/or schedule the depositions on a mutually convenient date for all parties and witnesses, and to have National Healthcare's counsel attend the depositions via telephone. See Letter from Spector to Rivera-Soto of 10/8/03 (annexed hereto as Ex. 10). In contrast, National Healthcare obstinately refuses to attend the depositions unless Penn Treaty stipulates to the unreasonable demand that it pay for National Healthcare's entire cost of attendance. See Letter from Rivera-Soto to Spector of 10/9/03 (annexed hereto as Ex. 11).

## ARGUMENT

Penn Treaty is entitled, as a matter of right, to take third party depositions upon reasonable notice to National Healthcare until the October 30, 2003 discovery deadline. Since the October 30, 2003 discovery deadline has not passed, there is no reason why Penn Treaty should not be permitted to take

3

depositions upon reasonable notice to National Healthcare to discover facts "relevant to the claim or defense of any party."  See FED. R. CIV. P. 26(b)(1).  Penn Treaty and its counsel are constantly evaluating this case as discovery proceeds, new facts come to light and National Healthcare's position with respect to certain evidence or facts become known.  The depositions of Axmann and Mankamyer, which will likely be short, will furnish relevant and important testimony regarding National Healthcare's allegations and Penn Treaty's defense.  Their testimony will reflect that there were issues regarding the AllRisk program, wholly unrelated to Penn Treaty's performance, that contributed to the failure of the program to meet National Healthcare's lofty goals of projected revenues in excess of $200 million during its first five years of operations.  See Am. Compl. ¶ 61.  Attempting to confine Penn Treaty's right to take two necessary depositions unduly prejudices its ability to discover whatever facts are necessary to fully investigate the allegations and present its defense.[2]

National Healthcare's principal contention — that it would not have consented to an extension of the discovery deadline if it had it understood that Penn Treaty intended to reserve the right to depose additional witnesses — seeks to elevate procedural hurdles over justice.[3]  Further, National Healthcare would not suffer any prejudice in having to attend the depositions.  First and most importantly, the revised deadline for taking depositions — October 30, 2003 — has not passed; nor was there any deadline by which the parties were to exchange lists of whom they intended to depose.  Second, the costs National Healthcare would incur in attending the depositions are not the consequence of Penn Treaty providing delayed notice of subpoenas — National Healthcare would have incurred these expenses even if

---

[2] See, e.g., Wainwright v. Washington Metropolitan Area Transit Authority, 163 F.R.D. 391, 397 (D. D.C. 1995) ("Whatever [Plaintiff's] motivation, and whether or not justified, further deposition of witnesses already deposed may lead to the identification of new witnesses.  Accordingly, *discovery shall be extended to both identified and new witnesses*.") (emphasis added).

[3] Penn Treaty is entitled, as a matter of law, to depose additional witnesses during an extension of discovery.  See Ottaviano v. Pratt & Whitney, Division of United Technologies, Corp., No. Civ. 300CV536PCD, 2001 WL 650708 (D. Conn. 2001) (denying defendant's motion to quash a subpoena where although discovery extension did not reference subpoena as "a reason for extension," the court accepted plaintiff's assertion of "changed circumstances" and defendant would suffer no prejudice ).

Penn Treaty had provided it with notice of subpoenas on the first day of discovery.[4]  Indeed, National Healthcare states that it would agree to attend the depositions on the unreasonable condition that Penn Treaty pay its expenses, demonstrating that this is just an attempt to frustrate justice and extort money from Penn Treaty.  Parties are responsible for their own costs associated with attending a deposition.[5]  National Healthcare's contention that a party seeking to depose witnesses not originally noticed should pay the expenses the opposing party incurs in attending those depositions is without precedent and devoid of any merit.  Third, Penn Treaty has offered to schedule the depositions for an agreeable time and to arrange for National Healthcare to take the depositions via telephone, if necessary.

## CONCLUSION

For the foregoing reasons, Penn Treaty respectfully requests that the Court grant its motion pursuant to FED. R. CIV. P. 37, and other and further relief as this Court deems just and proper.

| | |
|---|---|
| Mindy J. Spector<br>David L. Yohai<br>Anna J. Hong<br>WEIL GOTSHAL & MANGES, LLP<br>767 Fifth Avenue<br>New York, NY  101536-0119<br>(212) 310-8000 | Martin C. Bryce, Jr.<br>Douglas L. Flitter<br>BALLARD SPAHR ANDREWS &<br>INGERSOLL, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA  19103<br>(215) 665-8500 |
| Attorneys for Defendants | Attorneys for Defendants |

Dated:  October 14, 2003

---

[4]  Because the costs of the depositions do not establish prejudice, National has all but conceded that it will incur no prejudice in attending the depositions.

[5]  See Groman v. Sears Roebuck & Co., Civ. A. No. 96-3514, 1996 WL 612468, at *1 (E.D. Pa. Oct. 16, 1996) ("This court has generally been reluctant to impose charges for travel expenses upon the party taking the depositions and will usually rule that the parties should bear their own expenses, unless circumstances are such as to indicate strongly that discretion should be exercised to the opposite effect.") (quotations and citations omitted).  National Healthcare has failed to demonstrate strong or special circumstances pursuant to which Penn Treaty should bear National Healthcare's costs.

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this day served true and correct copies of the motion of defendants for an Order declaring the right to take depositions of fact witnesses and for plaintiff to bear its own costs, the accompanying memorandum of law, certification and proposed order by hand delivery upon:

> Roberto A. Rivera-Soto, Esq.
> Daniel G. Lyons, Esq.
> Fox Rothschild
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103

Dated: October 14, 2003

_____
Martin C. Bryce, Jr.