IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC. : <br><br> Plaintiff, <br><br> v. <br><br> PENN TREATY AMERICAN CORPORATION <br> - and - <br> PENN TREATY NETWORK AMERICA <br> INSURANCE COMPANY <br> - and - <br> SENIOR FINANCIAL CONSULTANTS <br> COMPANY <br><br> Defendants. | CIVIL ACTION <br> NO. 02-CV-3600 <br><br><br><br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

### PLAINTIFF'S RESPONSES TO DEFENDANT PENN TREATY AMERICAN CORPORATION'S FIRST SET OF INTERROGATORIES AND DOCUMENT REQUESTS

Plaintiff National Healthcare Services, Inc. ("NHCS") hereby responds to the first set of interrogatories and document requests served by defendant Penn Treaty American Corporation ("Penn Treaty").

### GENERAL OBJECTIONS

1. NHCS objects to each and every interrogatory and request for production of documents to the extent that it seeks disclosure of documents or information containing privileged communications, attorney work-product, client work-product, or trial preparation material, on the grounds that such discovery is not permissible under the Federal Rules of Civil Procedure. None of NHCS's specific responses shall be construed to mean that NHCS intends to



PLAINTIFF'S EXHIBIT E

provide privileged or work-product documents or information in the absence of an intentional waiver. Any inadvertent disclosure of privileged documents or information or work-product shall not constitute a waiver of an otherwise valid claim of privilege, and any failure to assert a privilege or other protection as to certain documents or information shall not be deemed to constitute a waiver of the privilege or other protection as to any other documents or information so protected.

2. NHCS objects to each and every interrogatory and request for production of documents to the extent that it is vague, ambiguous, overbroad, vexatious, unduly burdensome or seeks information not relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

3. NHCS objects to each and every interrogatory and request for production of documents to the extent that it seeks information or documents that are confidential and/or proprietary business and financial information.

4. NHCS objects to each and every interrogatory and request for production of documents to the extent that it seeks documents or information protected by any confidentiality obligation owed to a third party.

5. NHCS objects to Penn Treaty's definitions and instructions as improperly attempting to impose burdens and obligations upon NHCS beyond the requirements of the Federal Rules of Civil Procedure.

6. NHCS asserts each of the general objections set forth above to each of the interrogatories and requests for production documents. By setting forth specific objections, NHCS does not intend to limit or restrict the general objections contained in this response. To the extent that NHCS provides information in response to a specific interrogatory or request to

which it has objected, NHCS reserves the right to maintain such objections with respect to any additional information and such objections are not waived by the furnishing of documents or information.

7.  NHCS expressly reserves the right to supplement and/or amend these responses should additional documents or information become available.

## RESPONSES TO INTERROGATORIES

1.  Identify all persons who serve or have served as directors, officers or employees of NHCS from October 20, 1999 to the date of this interrogatory, and for each such person state the dates of service, the person's title or position, and the nature of the person's responsibilities at NHCS.

**Response**: The following persons were directors, officers and employees of NHCS during the referenced time period: (a) Neal Forman, director, vice president and secretary; (b) Herb Schwartz, director and president; and (c) Ron Furman, director and bookkeeper.

2.  Identify all persons who at any time from October 20, 1999 to the date of this interrogatory have had or have any ownership interest in NHCS, including all shareholders, and fully describe that ownership interest.

**Response**: When NHCS was formed, it was owned by Neal Forman and Herb Schwartz, each of whom was a 50% shareholder. Effective August 22, 2001, Michael J. Callahan obtained a 25% ownership interest from Neal Forman; the shares acquired by Mr. Callahan were restricted as non-voting shares.

3.  Identify all transfers of ownership in NHCS from October 20, 1999 to the date of this interrogatory.

**Response**: See response to interrogatory no. 2.

4.  Identify all companies contacted by NHCS during 1999 regarding the AllRisk Healthcare program.

**Response**: NHCS purchased a list of all insurance companies in the United States and made various contacts. The list is produced herewith. To the best of its knowledge, NHCS contacted the following companies prior to Glen Levit's request that NHCS deal exclusively with Defendants: (a) Old American Insurance Company; (b) Sun Insurance Marketing Network, Inc.; and (c) Continental General.

5.  State the amount of Plaintiff's compensatory damages claim in the Amended Complaint and describe in detail the basis for such claim.

**Response**: The damages suffered by NHCS will be the subject of expert testimony. NHCS will serve its expert report in accordance with the Court's pretrial orders.

6.  With respect to paragraph 64 of the Amended Complaint, identify all persons involved in the development of the AllRisk Healthcare program, the nature of their responsibilities, and the amount of time each person spent working on such development.

**Response**: Objection. NHCS objects to this interrogatory as vague, ambiguous, overly broad and unduly burdensome. Without waiver of these objections, NHCS states that Neal Forman and Herb Schwartz were involved in the development of the AllRisk Healthcare

4

program. The nature of their responsibilities is reflected in the documents produced herewith. NHCS, however, did not maintain specific records concerning the amount of time spent working on the development of the AllRisk Healthcare program. In addition, Web Barth and Mike Hauert were involved in program development and coordination, including fulfillment of the duties listed in Exhibit "B" to the Agreement. Further, NHCS notes that representatives of Defendants were also involved in the development of the AllRisk Healthcare program.

7. With respect to paragraph 64 of the Amended Complaint, state the amount of money NHCS spent in developing the AllRisk Healthcare program and describe fully the manner in which such funds were spent, including the identity of the recipients of all such funds.

**Response**: Objection. NHCS objects to this interrogatory as vague and ambiguous. Without waiver of these objections, see general accounting ledger produced herewith.

8. With respect to paragraph 66 of the Amended Complaint, describe fully how Defendants misappropriated the AllRisk Healthcare program, including without limitation how Defendants benefited from the AllRisk Healthcare program to the exclusion of NHCS.

**Response**: Paragraph 66 of the Amended Complaint is in writing and speaks for itself. See also NHCS's response to Defendants' motion to dismiss Count Two of the Amended Complaint. Further, as discovery is ongoing, NHCS reserves the right to supplement this response as additional information comes to light.

9.      With respect to paragraphs 61 and 65 of the Amended Complaint, identify the representatives of Defendants who agreed with projections that the AllRisk Healthcare program would produce revenues in excess of $200 million during the first five years of operations and state the manner in which such representatives manifested their agreement to such projections.

**Response**: Glen Levit agreed with the projections and supplied the information upon which the projections were based. He expressed this agreement verbally and through his decision to move ahead with the program. Based on the projections, Mr. Levit negotiated for 50% of the AllRisk Healthcare program and for exclusivity. Subsequently, Herb Schwartz traveled to Philadelphia and met with Mr. Levit, Jane Bagley, Derrick Brickhouse and Web Barth, at which time the projections were discussed. Mr. Levit was so enthralled by the projections – which, again, were drawn from the information that he himself provided – that he decided to raise the membership rates.

## RESPONSES TO DOCUMENT REQUESTS

1.      All documents concerning any of the Defendants.

**Response**: Objection. This request is vague, ambiguous, overly broad, and unduly burdensome. Without waiver of these objections, relevant, non-privileged, responsive documents are produced herewith.

2.      The original articles of incorporation and bylaws of NHCS and any amendments thereto.

**Response**: Copies of the articles of incorporation and bylaws of NHCS are produced herewith.

3. All documents concerning the AllRisk Healthcare program.

**Response**: Non-privileged, responsive documents are produced herewith.

4. All documents concerning the Promissory Note, including without limitation, all documents concerning the manner in which the money received by NHCS pursuant to the Promissory Note was spent.

**Response**: Non-privileged, responsive documents are produced herewith.

5. All documents concerning Michael Callahan.

**Response**: Objection. This request is overly broad and unduly burdensome. Without waiver of these objections, any relevant, non-privileged, responsive documents are produced herewith.

6. All documents concerning the ownership structure of NHCS from October 20, 1999 to the date of this request.

**Response**: Any non-privileged, responsive documents are produced herewith.

7. All documents that identify any directors, officers, or employees of NHCS from October 20, 1999 to the date of this request, including but not limited to resumes, curricula vitae or other biographical summaries.

7

**Response**: Any non-privileged, responsive documents are produced herewith.

8.  All documents concerning NHCS's shareholders from October 20, 1999 to the date of this request.

**Response**: Objection. This request is overly broad and unduly burdensome. Without waiver of these objections, any relevant, non-privileged, responsive documents are produced herewith.

9.  All documents concerning communications between NHCS and other companies during 1999 regarding the AllRisk Healthcare program.

**Response**: Any non-privileged, responsive documents are produced herewith.

10. All documents concerning Plaintiff's damages claim in the Action.

**Response**: The damages suffered by NHCS will be the subject of expert testimony. NHCS will serve its expert report in accordance with the Court's pretrial orders.

11. All documents concerning the projection, referred to in paragraphs 61 and 65 of the Amended Complaint, that the AllRisk Healthcare program would produce revenues in excess of $200 million during the first five years of operations.

**Response**: Non-privileged, responsive documents are produced herewith.

8

                                           /s/
                                      Roberto A. Rivera-Soto
                                      Daniel G. Lyons
                                      **FOX, ROTHSCHILD, O'BRIEN & FRANKEL, LLP**
                                      2000 Market Street – Tenth Floor
                                      Philadelphia, Pennsylvania 19103-3291
                                      (215) 299-2000

                                      **ATTORNEYS FOR PLAINTIFF,**
                                      **NATIONAL HEALTHCARE SERVICES, INC.**

**DATED:** December 16, 2002

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served Plaintiff's Responses to Defendant Penn Treaty American Corporation's First Set of Interrogatories and Document Requests via first-class U.S. mail upon the following:

>Geoffrey A. Kahn, Esquire
>Douglas L. Flitter, Esquire
>Ballard Spahr Andrews & Ingersoll, LLP
>1735 Market Street
>51st Floor
>Philadelphia, PA 19103-7599

>_____
>DANIEL G. LYONS

**DATED:** December 16, 2002