1

```
 1        IN  THE  UNITED  STATES  DISTRICT  COURT
      FOR  THE  EASTERN  DISTRICT  OF  PENNSYLVANIA
 2
                          *    *    *
 3    NATIONAL  HEALTHCARE         :    CIVIL  ACTION
      SERVICES,  INC.,             :
 4                  Plaintiff,     :
                                   :
 5             -vs-                :
                                   :
 6    PENN  TREATY  AMERICAN       :
      CORPORATION,  et  al.,       :    NO.  02-CV-3600
 7                Defendants.:          (MM)
                          *    *    *
 8        Tuesday,  October  14,  2003
                          *    *    *
 9
                      Realtime  videotape
10    deposition  of  NEAL  A.  FORMAN,  in  his
      individual  capacity,  and  Rule  30 (b)(6)
11    realtime  videotape  deposition  of  NATIONAL
      HEALTHCARE  SERVICES,  INC.,  taken  through
12    its  representative  NEAL  A.  FORMAN,  held
      in  the  law  offices  of  BALLARD,  SPAHR,
13    ANDREWS  &  INGERSOLL,  LLP,  1735  Market
      Street,  42nd  Floor,  Philadelphia,
14    Pennsylvania  19103,  on  Tuesday,  October
      14,  2003,  beginning  at  9:33  a.m.,  before
15    Kimberly  A.  Cahill,  a  Registered
      Professional  Reporter  and  Approved
16    Reporter  of  the  United  States  District
      Court.
17
                      *    *    *
18
19
20        ESQUIRE  DEPOSITION  SERVICES
                   15th  Floor
21        1880  John  F.  Kennedy  Boulevard
              Philadelphia,  PA   19103
22              (215)  988-9191
23
24
```

PLAINTIFF'S
EXHIBIT
E-

NEAL A. FORMAN

31

1  effective, is it not true then that Mr.

2  Callahan actually has a 50 percent

3  ownership interest in National Healthcare

4  Services?

5         A.    After Herb Schwartz resigned

6  and turned his stock back into the

7  corporation, then it would grant Michael

8  50 percent and I would end at 50 percent.

9         Q.    Okay.

10         And I don't see any mention

11  here of voting or nonvoting or any -- any

12  other restriction here.

13         Is it your understanding

14  that Mr. Callahan currently -- currently

15  own -- owns 50 percent of the voting

16  stock at this point?

17         MR. LYONS:  Objection to the

18     form and objection to counsel's

19     characterization of the document.

20         THE WITNESS:  In an answer

21     to this, I believe this was after

22     the termination; that Herb decided

23     that he did not want any position

24     in the company and he wanted to be

NEAL A. FORMAN

32

1    relieved of any responsibility, so

2    he is -- to my knowledge, Michael

3    Callahan has never had any say in

4    the running of this company, ever.

5  BY MR. YOHAI:

6    Q.    I think you're answering a

7  different question.

8    A.    Okay.

9    Q.    My question --

10   A.    Okay.

11       MR. LYONS:  Objection.

12  BY MR. YOHAI:

13   Q.    If you can concentrate on my

14  question, my question was, is it your

15  understanding that Mr. Callahan currently

16  has 50 percent interest, a voting

17  interest or a nonvoting interest in

18  National Healthcare Services?

19   A.    To my knowledge, to this

20  day, as of this hour, I believe he still

21  has a nonvoting interest --

22   Q.    A nonvoting --

23   A.    -- because I'm not -- if

24  this was executed, then I would say

122

1     Q.     No, not the car?

2     A.     No.

3     Q.     Any of your family's

4  expenses that you paid with the money?

5     A.     I just don't remember.

6     Q.     Okay.

7            Now, you say that -- that

8  because of the delay, that that's why you

9  -- you were using this money, that that's

10 why you needed to use this money to draw,

11 because of Penn Treaty's delays, that's

12 why it was appropriate to --

13    A.     That was part of it.  Had we

14 executed this program -- had Penn Treaty

15 fulfilled their commitment of promises to

16 deliver the program to the people who got

17 turned down --

18    Q.     Right.

19    A.     -- we would have had enough

20 income coming in that we would never had

21 to use any money.

22    Q.     So you believe that it was

23 the result of the delay, that's why you

24 had to use some of this money to pay your

NEAL A. FORMAN

154

1  focus on what Mr. Levit said to the

2  extent you remember.

3              What do you remember Mr.

4  Levit saying -- saying during that

5  meeting?

6        A.     Well, he was very

7  enthusiastic.  He was very excited about

8  the opportunity.  He could see a huge

9  market potential for the product, and he

10 says, let's just get going.  Let's go put

11 it together.

12       Q.     Do you remember him saying

13 anything else at that meeting about this

14 product or anything else?

15       A.     No.

16       Q.     Okay.

17              After that in-person

18 meeting, what was your next either

19 on-the-phone or in-person meeting with

20 Mr. Levit?

21       A.     Well, I think at that point

22 after we got back home, we started

23 preparing an outline of the way the

24 program would look and the type of