**Dietrich, Karen**

| | |
|---|---|
| From: | CALLAHANKIDS@aol.com |
| Sent: | Wednesday, October 17, 2001 9:58 PM |
| To: | TSadler@thslaw.com; nforman@nwlink.com; Hesassoc@aol.com |
| Subject: | Re: Penn Treaty |

Dear Tom,

Thank you for your e-mail on 10/16/01. I have spoken with Neal and Herb and they are duly offended. Nonetheless, it seems as if we have a basis for settlement of some of the issues. Please confirm that at this point Penn Treaty agrees with two of our four settlement terms: To transfer the interests of Penn Treaty for nominal consideration ($1.00) and to continue to administer the program for up to 6 mos while NHSI looks for a replacement.

Regarding the other two items I am unclear of Penn Treaty's position. We know what the balance is on the loans to NHCS. I have a letter from Jane Bagley that says that these are completely separate from the All Risk agreement so the present position that these were "done in conjunction with the project" is a pleasant surprise. That is what we have maintained all along. In any event, we are adamant that these loans should be forgiven. We can go into the many breaches we feel justify this position but Penn Treaty is fully aware of our position at this point so I will save you the rhetoric.

This brings us to the final point: a payment for the past from Penn Treaty. While it may not be admissible in court due to an agreement to that effect, in a couple of phone conferences held to discuss the All Risk problems, Mr. Brickhouse and Mr. Hunt acknowledged that PTA was not in a position to give All Risk the attention it deserved due to the company's other problems and would not be able to for an estimated 18 months. We certainly can, and will if necessary, lay out all of the things that we feel PTA has done and not done but the bottom line is that we all know and PTA has admitted its failures. If we have to go through that exercise then we might as well do it in arbitration because that is where it will end up. There is literally nothing that PTA can say or do at this point that will change our minds as to the culpability for the present situation with All Risk.

Our position extends to the allegations that "NHSI has not performed any of the promises it made to promote the program..." as well. Were we to put on a case we would not only look to the breach of black and white contractual obligations but would have Mr. Schwartz testify as to incidents such as how he received a call from Glen Levit because he "insulted" Mr. Brickhouse and Penn Treaty"s staff by trying to give marketing input (and offering to come and train agents). We will also take the position that statements from Penn Treaty's agents to the effect that "the competition is giving this type of discount program away for free" only go to show the lack of knowledge about the product and the market. Discount programs have always been available, sometimes for nominal amounts. This program was aimed at the uninsurable, not those who could be given the program free with a SOLD insurance policy. The program was designed for turn downs, uninsureds. The agents that made these comments don't know what they were supposed to sell or to whom, or someone missed the mark in their marketing to the agents.

Herb and Neal can go on and on about the failures of Penn Treaty in bringing this program to market and are prepared to arbitrate such issues. However, in light of the Nov. 1st review by the insurance commissioner we feel it would be in everyone's best interests to have this matter settled right away. If we cannot come to an immediate agreement we will file for arbitration before the end of the month. Short of a complete agreement I am willing to recommend to Herb and Neal that with an agreement on the first three points we could separate and proceed to arbitration on just the amount of damages, if any -- in other words, just arbitrate point four of the settlement proposal. The benefit to PTA would be to allow NHIS to mitigate its prospective damages by getting the program out to another company or marketing it itself.

Please let me know what you think as soon as possible because it is our understanding that the Pennsylvania Department of Insurance may take action in November and we want this settled or in arbitration before the commisioner acts.

I look forward to hearing from you.

10/18/2001



Regards,

Michael Callahan

10/18/2001