```
                                                              1
         IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                      *   *   *
NATIONAL HEALTHCARE          :   CIVIL ACTION
SERVICES, INC.,              :
              Plaintiff,     :
                             :
     -vs-                    :
                             :
PENN TREATY AMERICAN         :
CORPORATION, et al.,         :   NO. 02-CV-3600
              Defendants.:       (MM)
                      *   *   *
              Tuesday, October 14, 2003
                      *   *   *

          Realtime videotape deposition of NEAL A. FORMAN, in his
individual capacity, and Rule 30 (b)(6) realtime videotape deposition of NATIONAL HEALTHCARE SERVICES, INC., taken through its representative NEAL A. FORMAN, held in the law offices of BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP, 1735 Market Street, 42nd Floor, Philadelphia, Pennsylvania 19103, on Tuesday, October 14, 2003, beginning at 9:33 a.m., before Kimberly A. Cahill, a Registered Professional Reporter and Approved Reporter of the United States District Court.

                      *   *   *


             ESQUIRE DEPOSITION SERVICES
                    15th Floor
          1880 John F. Kennedy Boulevard
             Philadelphia, PA    19103
                  (215) 988-9191
```

PLAINTIFF'S EXHIBIT B

NEAL A. FORMAN

```
                                                      32
 1           relieved of any responsibility, so
 2           he is -- to my knowledge, Michael
 3           Callahan has never had any say in
 4           the running of this company, ever.
 5  BY MR. YOHAI:
 6           Q.    I think you're answering a
 7  different question.
 8           A.    Okay.
 9           Q.    My question --
10           A.    Okay.
11                 MR. LYONS:  Objection.
12  BY MR. YOHAI:
13           Q.    If you can concentrate on my
14  question, my question was, is it your
15  understanding that Mr. Callahan currently
16  has 50 percent interest, a voting
17  interest or a nonvoting interest in
18  National Healthcare Services?
19           A.    To my knowledge, to this
20  day, as of this hour, I believe he still
21  has a nonvoting interest --
22           Q.    A nonvoting --
23           A.    -- because I'm not -- if
24  this was executed, then I would say
```

```
                                                              1
 1            UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF PENNSYLVANIA
 2
      ------------------------------x
 3    NATIONAL HEALTHCARE SERVICES,:   CIVIL ACTION
      INC.,                        :
 4            Plaintiff,           :   NO. 02-CV-3600
                                   :   (MM)
 5            VS.                  :
                                   :        COPY
 6    PENN TREATY AMERICAN         :
      CORPORATION, et al.,         :
 7            Defendants.          :
      ------------------------------x
 8
 9            Videotaped deposition of
10    HERBERT E. SCHWARTZ, held at the law
11    offices of BALLARD, SPAHR, ANDREWS &
12    INGERSOLL, LLP, 1735 Market Street, 51st
13    Floor, Philadelphia, Pennsylvania 19103,
14    on Monday, September 29, 2003, beginning
15    at 9:04 a.m., before Debra J. Weaver, a
16    Federally Approved Registered
17    Professional Reporter, Certified Realtime
18    Reporter and Certified Shorthand Reporter
19    of NJ (No. XI 01614) and Delaware (No.
20    138-RPR, Expiration 1/13/05).
21
              ESQUIRE DEPOSITION SERVICES
22         1880 John F. Kennedy Boulevard
                    15th Floor
23            Philadelphia, PA   19103
                 (215) 988-9191
24
```

1    Q.    Yes. Somebody who is going
2 to be -- who has some of the stock of the
3 company.
4    A.    No, no.
5    Q.    Okay. What if it brought on
6 a principal, putting aside whether the
7 person has a small percentage of the
8 company, but if it brought on somebody
9 like yourselves, Neal Forman and Herb
10 Schwartz as a principal of the company,
11 would that constitute a change in
12 management of the company, given that the
13 two of you were in charge of the company?
14 If you brought on another person, might
15 that be a change in management?
16    A.    I consider a change of
17 management when you -- when a person is
18 employed by the company or has ownership
19 in the company and has certain
20 responsibilities to manage the company,
21 if that's what you mean. There was no
22 other management in this company other
23 than Neal and myself.
24    Q.    Were there other principals

275

| | |
|---|---|
| 1 | fulfillment and service job.  His name is |
| 2 | Mike Callahan." |
| 3 |     A.    Who is this memo from? |
| 4 |     Q.    It's from Web Barth. |
| 5 |     A.    From Web.  Okay. |
| 6 |     Q.    "First of all, we have a new |
| 7 | exec helping to manage our fulfillment |
| 8 | and service job.  His name is Mike |
| 9 | Callahan."  Do you see that? |
| 10 |     A.    Okay.  Yes. |
| 11 |     Q.    So was Mike Callahan an exec |
| 12 | at Web Barth's company?  He was a new |
| 13 | exec somewhere? |
| 14 |     A.    You know, I don't know.  All |
| 15 | I know is he loaned Web money and he |
| 16 | worked -- started working with Web Barth |
| 17 | on -- relating to our -- what Web was |
| 18 | doing for our program and any other thing |
| 19 | that Web Barth may have been involved in. |
| 20 | I don't know.  But he was not an |
| 21 | executive employee or anything else with |
| 22 | National Healthcare Services. |
| 23 |     Q.    Well, isn't it a fact that |
| 24 | Mr. Callahan purchased 250 shares of |

276

1  National Healthcare Services, Inc.?
2       A.    He purchased 250 shares?  He
3  did -- you know what, I don't want to
4  play ignorant on this, but I'll tell you
5  what I do know, but Neal Forman knows the
6  whole deal because he and Neal Forman,
7  like I said, were friends and had many
8  different ventures and partnerships, I
9  think, together, and Neal wanted to sell
10 some of his National Healthcare Services
11 stock to Mike Callahan.  I don't know how
12 it happened.  Again, I was against that.
13 And, finally, I did okay the issue -- for
14 Neal to issue him stock, part of his
15 stock, part of Neal Forman's stock,
16 non-voting-only stock, only non-voting,
17 and that Michael Callahan would not have
18 any management or any say-so in the
19 company whatsoever.
20      Q.    Okay.  What was the value
21 that Mr. Callahan paid for his 250 shares
22 of the company?
23      A.    That's between he and Neal
24 Forman.  Neal issued the shares -- Neal's

281

1  the situation by Neal Forman and Herb
2  Schwartz, the other two principals."
3  Okay.
4      Q.    Do you wish to change your
5  testimony that Mr. Callahan was not a
6  principal at this point in time or is Mr.
7  Callahan wrong that he was a principal?
8          MR. LYONS:  Objection.
9          THE WITNESS:  To my
10    knowledge, he was never an
11    employee and never paid a fee from
12    National Healthcare Services or
13    was he voted into the company as
14    an officer, nor did he ever have
15    any control or voting stock or
16    say-so in the company.  That's to
17    my knowledge at the time I was
18    there.
19 BY MR. YOHAI:
20     Q.    And can you think of a
21 reason why Mr. Callahan is representing
22 himself to be a principal of the company?
23     A.    Maybe he was referring to
24 his association with Web Barth.

```
                                                              Page 1
 1            UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF PENNSYLVANIA
 2
      ------------------------------x
 3    NATIONAL HEALTHCARE SERVICES,:   CIVIL ACTION
      INC.,                         :
 4            Plaintiff,            :  NO. 02-CV-3600
                                    :  (MM)
 5        VS.                       :
                                    :
 6    PENN TREATY AMERICAN          :
      CORPORATION, et al.,          :
 7            Defendants.           :
      ------------------------------x
 8
 9            Videotaped deposition of
10    MICHAEL J. CALLAHAN, held at the law
11    offices of BALLARD, SPAHR, ANDREWS &
12    INGERSOLL, LLP, 1735 Market Street, 51st
13    Floor, Philadelphia, Pennsylvania 19103,
14    on Wednesday, October 15, 2003, beginning
15    at 9:09 a.m., before Debra J. Weaver, a
16    Federally Approved Registered
17    Professional Reporter, Certified Realtime
18    Reporter and Certified Shorthand Reporter
19    of NJ (No. XI 01614) and Delaware (No.
20    138-RPR, Expiration 1/13/05).
21
22
23
24    Job No: 153616                             COPY
```

1            break.
2                    MS. SPECTOR:  Okay.
3                    THE VIDEOGRAPHER:  Stand by.
4            The time is 3:57 p.m.  Off the
5            record.
6                    (Off the record.)
7                    THE VIDEOGRAPHER:  The time
8            is 4:00 p.m.  We are back on the
9            record.
10     BY MR. RIVERA-SOTO:
11            Q.    Mr. Callahan, are you now or
12     have you ever been an officer of National
13     Healthcare Services?
14            A.    No.
15            Q.    Are you now or have you ever
16     been a director of National Healthcare
17     Services?
18            A.    No.
19            Q.    Are you now or have you ever
20     been in management charge of National
21     Healthcare Services?
22                    MS. SPECTOR:  Objection.
23                    THE WITNESS:  No.
24     BY MR. RIVERA-SOTO:

```
 1        Q.    Have you at any time
 2   communicated to anyone at Penn Treaty
 3   that you are either an officer, director
 4   or in management charge of National
 5   Healthcare Services?
 6             MS. SPECTOR:  Objection.
 7             THE WITNESS:  No.
 8   BY MR. RIVERA-SOTO:
 9        Q.    Has anyone at Penn Treaty
10   ever asked you if you are an officer,
11   director or in management charge of
12   National Healthcare Services?
13        A.    No.
14        Q.    To your knowledge, has Penn
15   Treaty ever asked anybody whether you
16   were an officer, director or in
17   management charge of National Healthcare
18   Services?
19             MS. SPECTOR:  Objection.
20             THE WITNESS:  Not to my
21        knowledge, no.
22   BY MR. RIVERA-SOTO:
23        Q.    To your knowledge, did you
24   ever represent to anybody -- not to your
```

Page 209

1    knowledge.
2            Q.    Did you ever represent to
3    anyone at Penn Treaty that you had
4    acquired either all or substantially all
5    of the assets of National Healthcare
6    Services?
7            A.    No.
8            Q.    Did you ever represent to
9    anybody at Penn Treaty that you had
10   received a majority of the stock of
11   National Healthcare Services?
12           A.    No.
13           Q.    Did anybody at Penn Treaty
14   ever ask you whether you had received a
15   majority -- all or substantially all of
16   the assets of National Healthcare
17   Services?
18           A.    No.
19           Q.    Did anyone at Penn Treaty
20   ever ask you whether you had received a
21   majority of the stock of National
22   Healthcare Services?
23           A.    No.
24           Q.    To your knowledge, has Penn

```
                                                          Page 210
 1    Treaty ever asked anybody whether you had
 2    received all or substantially all of the
 3    assets of National Healthcare Services?
 4              MS. SPECTOR:  Objection.
 5              THE WITNESS:  Not to my
 6         knowledge, no.
 7    BY MR. RIVERA-SOTO:
 8         Q.   To your knowledge, has Penn
 9    Treaty ever asked anybody whether you had
10    received a majority of the stock of
11    National Healthcare Services?
12              MS. SPECTOR:  Objection.
13              THE WITNESS:  No.
14    BY MR. RIVERA-SOTO:
15         Q.   Do you know what basis Mr.
16    Sadler had when he wrote the letter of
17    termination?
18              MS. SPECTOR:  Objection.
19              THE WITNESS:  He couldn't
20         have had any basis.  There was no
21         basis to be had.
22              MR. RIVERA-SOTO:  I have
23         nothing further of this witness.
24              MS. SPECTOR:  The deposition
```