IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., | CIVIL ACTION |
| Plaintiff, | NO.: 02-CV-3600 |
| v. | |
| PENN TREATY AMERICAN CORPORATION, et al., | |
| Defendants. | |

DEFENDANTS' RESPONSES
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendants Penn Treaty American Corporation ("Penn Treaty"), Penn Treaty Network America Insurance Company ("PTNA"), and Senior Financial Consultants Company ("SFCC") (collectively, "Defendants") respond and, by their undersigned attorneys, object to Plaintiff's First Set of Interrogatories Directed to Defendants as follows:

I. **GENERAL OBJECTIONS**

A. Defendants object to these interrogatories as overly broad and unduly burdensome to the extent they seek information that is not relevant to the claim or defense of any party.

B. Defendants object to providing any information that is protected from discovery by the attorney-client privilege, the work-product doctrine, or otherwise protected from disclosure by the Federal Rules of Civil Procedure or by law.

PHL_A #1692042 v2

PLAINTIFF'S
EXHIBIT
E

C. Defendants object to these interrogatories to the extent they impose burdens that exceed the requirements of Rules 26 and 33 of the Federal Rules of Civil Procedure. Defendants further object to these interrogatories on the ground that they exceed 25 in number, including subparts, as permitted by Rule 33(a).

D. Defendants object to these interrogatories to the extent the information requested could be more efficiently sought through other means of discovery.

E. Defendants object to these interrogatories as unduly burdensome to the extent they seek information already within the possession of plaintiff, in the public domain, or otherwise equally accessible and available to plaintiff.

## II. RESPONSES TO INTERROGATORIES

1. **Identify all witnesses you intend to call at trial and, for each witness identified, describe that person's expected testimony.**

    **RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants state that they have not yet determined which witnesses they intend to call at trial.

2. **Identify all documents that you intend to introduce or use at trial.**

    **RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants state that they have not yet determined which documents they intend to introduce or use at trial.

3. **Identify all representatives of Defendants involved in the formation and performance of the Agreement and, for each person identified, describe that person's specific role, including his or her responsibilities and all actions taken to fulfill those responsibilities.**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as overly broad and unduly burdensome in that the information sought is not relevant to the claim or defense of any party. Defendants object to the terms "formation" and "performance" as vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that Glen Levit was primarily responsible for negotiating the Agreement. Mr. Levit oversaw all aspects of the implementation and performance of the Agreement until his death on October 3, 2000. Jane M. Bagley served as a liaison with both plaintiff and third parties involved in the implementation of the Agreement and also provided legal counsel to the Defendants with respect to all aspects of the Agreement. Derrick Brickhouse, Tracy Levit Sussman, Matthew Sussman, Julia Frawley, and Kimberly Levit-Valuntas had primary responsibility for marketing the AllRisk Healthcare product. Cameron Waite and Mike Grill had primary responsibility for managing the finances of the AllRisk Healthcare program. Jackie Frantz had primary responsibility for billing, bookkeeping, commissions, and agent appointment. The foregoing individuals have the following positions at Penn Treaty: Ms. Bagley, Corporate Counsel; Mr. Brickhouse, Vice President, Sales; Ms. Frawley, Regional Marketing Representative; Ms. Levit-Valuntas, Marketing Department; Ms. Levit Sussman, Assistant Vice President, Marketing; Ms. Frantz, Vice President. Mr. Levit was President of Penn Treaty at the time of his death, and Mr. Sussman was Director of Sales.

**4. In which states did Defendants market the AllRisk Healthcare program for each of the years 1999, 2000 and 2001?**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants state that the AllRisk Healthcare program was not marketed in 1999; was marketed in Arizona, Florida, Illinois, Kentucky, Michigan, Ohio, Oregon, Pennsylvania, and Texas in 2000; and was marketed in all states but Alabama, Alaska, California, New Hampshire, New York, North Dakota, Oregon, Wisconsin, and Washington in 2001.

**5. Describe how Defendants marketed the AllRisk Healthcare program in each of the states included in your answer to the previous interrogatory, specifically identifying the representatives of Defendants responsible for such marketing.**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as overly broad and vague. Subject to and without waiving the foregoing objections, Defendants state that marketing efforts included, among other things, presentations at agent seminars, agent mailings, targeted telemarketing to existing and prospective agents, advertising, letters to individuals declined for PTNA insurance, postings on the PTNA website, postings on the PTNA Agent Resource website, participation in long term care forums and expos, agent conference calls, agent newsletters, and agent trip presentations. As described in Defendants' response to interrogatory number 3, Derrick Brickhouse, Tracy Levit Sussman, Matthew Sussman, Julia Frawley, and Kimberly Levit-Valuntas had primary responsibility for marketing the AllRisk Healthcare product.

6. Categorized by state, identify all agents approved and appointed to sell AllRisk Healthcare for each for the years 1999, 2000 and 2001.

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants refer plaintiff to the document attached hereto as Exhibit A.

7. (a) Describe any and all efforts you made to enter the markets in the remaining states (i.e., states not included in your answers to interrogatories 4 through 6) for purposes of selling the AllRisk Healthcare program.

(b) Describe how and why these efforts, if any, were unsuccessful.

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants state that regulatory restraints prevented the marketing of the AllRisk Healthcare program in California, Oregon, and Washington; SFCC could not register to do business in New York without a special consent; SFCC's application for a certificate of authority to do business in New Hampshire was denied due to a name conflict with another entity. Defendants further state that Defendants had a limited agent presence in Alaska and New Hampshire and did not do business in Alabama and North Dakota during the years 1999, 2000, and 2001. Defendants made a business decision not to market the AllRisk Healthcare program in Wisconsin.

8. Categorized by state, how much revenue did Defendants receive through sales of the AllRisk Healthcare program for each of the years 1999, 2000 and 2001?

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants refer plaintiff to the document attached hereto as Exhibit B.

   **9. Identify and describe all expenditures made by Defendants in connection with the AllRisk Healthcare venture.**

   **RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as overly broad and vague. Subject to and without waiving the foregoing objections, Defendants state that they spent in excess of $200,000 on the AllRisk Healthcare venture. Defendants, however, reserve the right to supplement this response as they develop more information related to such expenditures.

   **10. Describe any and all training provided by Defendants to agents concerning the sale of AllRisk Healthcare, specifically identifying the representatives of Defendants responsible for such training.**

   **RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing objections, Defendants state that training was conducted primarily by the individuals responsible for marketing the AllRisk Healthcare program identified in Defendants' response to interrogatory no. 3. Training included, among other things, agent seminars, presentations and forums, conference calls, agent mailings, agent guidelines, agent question and answer sheets, information posted on the PTNA Agent Resource Center website, and telephone calls to agents and prospective agents.

   **11. Identify all persons involved in your decision to terminate the Agreement, and describe each person's role in that decision.**

   **RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to the extent the information sought is protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Defendants state that the decision to terminate the Agreement was made by Jane M. Bagley, in consultation with Cameron Waite and Bill Hunt.

**12. Identify and describe the alleged "material change in the management of [NHCS]" referenced in the termination notice attached as Exhibit "J" to the amended complaint filed in this action.**

<u>RESPONSE:</u>   Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to the extent the information sought is protected by the attorney-client privilege and work product doctrine. Subject to and without waiving the foregoing objections, Defendants refer plaintiff to the termination notice attached as Exhibit J to the Amended Complaint, which is a written document that speaks for itself.

**13. Identify and describe the "management functions" allegedly assumed by Michael Callahan, as referenced in the termination notice attached as Exhibit "J" to the amended complaint filed in this action.**

<u>RESPONSE:</u>   Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to the extent the information sought is protected by the attorney-client privilege and work product doctrine. Subject to and without waiving the foregoing objections, Defendants refer plaintiff to the termination notice attached as Exhibit J to the Amended Complaint, which is a written document that speaks for itself.

**14. How and why did you determine that the purported change in the management of NHCS was "material"?**

<u>RESPONSE:</u>   Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to the extent the information sought is protected by the attorney-client privilege and work product doctrine. Subject to and without waiving the foregoing objections, Defendants refer plaintiff to the termination notice attached as Exhibit J to the Amended Complaint, which is a written document that speaks for itself.

**15. Identify all ratings Defendants received from A.M. Best Co. from January 1, 1999 to the present, specifying the exact date when the ratings were received. Include all changes in Defendants' A.M. Best Co. ratings during this time period and the dates thereof.**

<u>RESPONSE:</u>   Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as unduly burdensome in that the information sought is not relevant to the claim or defense of any party. Defendants further object on the ground that the information sought is publicly available and thus equally accessible to plaintiff.

**16. Identify all states in which Defendants' license to write and/or sell insurance was suspended or revoked from January 1, 1999 to the present, specifying the effective date of the suspension or revocation, and the reasons therefor.**

<u>RESPONSE:</u>   Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as unduly burdensome in that the information sought is not relevant to the claim or defense of any party.

17. **Identify and describe all regulatory actions taken against Defendants from January 1, 1999 to the present due to Defendants' financial condition, specifying the effective date of the action and the reasons therefor.**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as unduly burdensome in that the information sought is not relevant to the claim or defense of any party.

18. **Identify all states in which Defendants voluntarily ceased selling insurance products from January 1, 1999 to the present, specifying the effective date and reason for each such voluntary cessation.**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as unduly burdensome in that the information sought is not relevant to the claim or defense of any party.

19. **At what price was Penn Treaty's stock selling (per share) as of the close of business on October 21, 1999 and November 5, 2001, respectively?**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Defendants further object to this interrogatory as unduly burdensome in that the information sought is not relevant to the claim or defense of any party. Defendants further object on the ground that the information sought is publicly available and thus equally accessible to plaintiff.

20. **Identify all facts, witnesses and documents that allegedly support each of Defendants' affirmative defenses to the amended complaint filed in this action.**

**RESPONSE:** Defendants incorporate by reference General Objections A through E as though fully set forth herein. Subject to and without waiving the foregoing

objections, Defendants refer plaintiff to Defendants' initial disclosures pursuant to Rule 26(a)(1) and to the documents being produced in response to plaintiff's document requests.

Date: December 12, 2002

Martin C. Bryce, Jr.
Douglas L. Flitter
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
Philadelphia, PA 19103
(215) 665-8500

PHL_A #1692042 v2

10

## VERIFICATION

I, Derrick Brickhouse, Vice President of Sales for Penn Treaty American Corporation, verify pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the statements made in the foregoing Response of Defendants to Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Dated: December 12, 2002

_____
Derrick Brickhouse

PHL_A #1692042 v2

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served true and correct copies of Defendants' responses to plaintiff's first set of interrogatories by hand delivery upon:

>Daniel G. Lyons, Esq.
>Fox Rothschild O'Brien & Frankel LLP
>2000 Market Street, 10th Floor
>Philadelphia, PA  19103

Dated: December 12, 2002

_____
Douglas L. Flitter

PHL_A #1692042 v2