IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., <br> Plaintiff, <br> v. <br> PENN TREATY AMERICAN CORPORATION, et al. <br> Defendants. | CIVIL ACTION <br> NO. 02-CV-3600 (MM) |

## ORDER

AND NOW this _____ day of _____, 2005, upon consideration of Defendants' Motion for Leave to Amend Answer to Assert a Counterclaim, and Plaintiff's response thereto, it is hereby ORDERED and DECREED that the motion is DENIED.

BY THE COURT:

_____
HONORABLE MARY A. MCLAUGHLIN

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., : <br> Plaintiff, : <br> : <br> v. : <br> : <br> PENN TREATY AMERICAN : <br> CORPORATION, et al. : <br> Defendants. : | CIVIL ACTION <br> NO. 02-CV-3600 (MM) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO AMEND ANSWER TO ADD A COUNTERCLAIM, OR IN
THE ALTERNATIVE, CROSS-MOTION TO RE-OPEN  FACT
DISCOVERY FOR A PERIOD OF NINE MONTHS AND TO ASSESS FEES**

Plaintiff, National Healthcare Services, Inc. ("**NHCS**"), by and through its undersigned counsel, respectfully submits this brief in opposition to the motion to amend answer to add a counterclaim filed by defendants, Penn Treaty American Corporation, Penn Treaty Network American Insurance Company and Senior Financial Consultants Company (collectively "**Penn Treaty**"). As will be discussed, this Court should exercise its discretion and deny Penn Treaty's motion for leave to amend its answer to assert a counterclaim. Penn Treaty has unduly delayed in bringing this motion; adding a counterclaim at this late date, many months after the close of fact discovery, will significantly increase the costs of this litigation and will otherwise severely prejudice NHCS; the proposed amendment will be futile for failure to state a claim upon which relief can be granted; and Penn Treaty's motion is in bad faith. In the event the Court is inclined to grant Penn Treaty's motion, NHCS, in the alternative, cross-moves to re-open fact discovery for a period of nine months in order to fairly defend itself against a completely new cause of action that to date has never been asserted by Penn Treaty. NHCS also requests the Court to

condition any order permitting amendment upon Penn Treaty's payment of legal fees incurred to date by NHCS.

## INTRODUCTION

This case is already old, having been filed by NHCS in 2002, almost three (3) years ago. An Amended Complaint was filed on August 12, 2002, from which the sole remaining count to be tried is a simple breach of contract claim. Fact discovery has been closed for almost 15 months. A scheduling order for the remainder of the case was entered by the Court on December 7, 2004. Not once during this time has Penn Treaty even mentioned to the Court or counsel any intent to assert a counterclaim. The reason for Penn Treaty's silence is simple - no such claim exists and it never has existed. Penn Treaty's current motion is merely an attempt to concoct a breach of contract cause of action claim in order to assert a backdoor claim for attorneys' fees and costs in defending against NHCS's claims in the unlikely event Penn Treaty prevails.

### Brief Summary of Facts

Prior to 1999, NHCS conceived and developed AllRisk Healthcare®, a nationwide healthcare savings program – a non-insurance product – directed to older Americans who could not qualify for long-term care insurance. In early June 1999, NHCS met with Penn Treaty, a leader in the long-term care insurance industry. After conducting extensive due diligence, the parties agreed to enter into a joint venture agreement. On October 21, 1999, the parties executed an exclusive five-year agreement for Penn Treaty to market AllRisk Healthcare® (the "Agreement") through its roster of agents.

Despite Penn Treaty's initial excitement for this discount health card program and its preliminary marketing efforts, due to the severe financial distress caused by Penn Treaty's

2

unrelated insurance business and the premature death of its then President (the primary Penn Treaty advocate for the AllRisk Healthcare ® program), Penn Treaty concocted a scheme to improperly untangle itself from its contractual obligations to NHCS. In a transparent effort to get out of the Agreement, Penn Treaty claimed that NHCS, by adding another person to its existing management team, had experienced a "material change in management" warranting immediate termination of the Agreement without notice or opportunity to cure as of November 5, 2001. Thereafter, Penn Treaty directed all of its agents to no longer accept applications for AllRisk Healthcare®. Penn Treaty's termination letter cited one and only one reason for termination—the alleged material change in management. Significantly, Penn Treaty has never notified NHCS of any other basis for termination of the Agreement.[1] Of course, no such material change in management ever took place as contemplated by the Agreement. That is the sole liability issue to be addressed at trial.

As a result of Penn Treaty's improper termination of the Agreement, NHCS suffered damages in the excess of $100,000,000 over the course of the five year agreement.

Upon the close of fact discovery, the parties sought mediation before the Honorable Edward Cahn. The mediation was unsuccessful. Thereafter, the Court referred the matter to United States Magistrate Judge Linda Caracappa for a settlement conference. Pending the mediation and subsequent settlement conference, the Court stayed expert discovery. Despite two separate in person settlement conferences before Judge Caracappa, in which NHCS

---

[1] The reason Penn Treaty concocted the material change in management termination was because it provided a basis pursuant to the Agreement for immediate termination without notice. In the event NHCS breached its performance obligations under the Agreement, as Penn Treaty now claims, NHCS would have been entitled to notice of such alleged performance breaches and provided with an opportunity to cure any default. No such notices have ever been received by NHCS from Penn Treaty.

3

representatives flew in from the West Coast, Penn Treaty never once made a formal settlement offer and ultimately refused to offer any money whatsoever to settle this case.[2]

Interestingly, during the course of the first settlement conference, NHCS mentioned to Judge Caraccappa in the presence of Penn Treaty that the Agreement provided that NHCS would recover attorney's fees from Penn Treaty in addition to damages if it prevailed on its claim for breach of the Agreement. Penn Treaty claimed to be unaware of such provision until it was pointed out to them at the settlement conference by counsel for NHCS. Upon review by counsel for Penn Treaty at the settlement conference, Penn Treaty claimed that such provision did not apply to claims for breach of the Agreement as between the contracting parties. Apparently, Penn Treaty has reconsidered the applicability of the contractual attorney fee provision and now improperly seeks to assert a counterclaim for breach of the Agreement solely as a vehicle to recover past and future attorney's fees for defending the case pursuant to such provision in the unlikely event they are successful at trial. This Court should reject such obvious tactical maneuvering.

It should also be noted that, after the unsuccessful mediation and settlement conferences, this Court directed the parties to confer and submit a proposed schedule for the remainder of the case up through trial. At no time did counsel for Penn Treaty reveal to the Court or counsel for NHCS, their intent to file a motion seeking to assert for the first time a counterclaim raising completely new issues in this case. Good faith and candor to the Court and counsel required Penn Treaty to raise such issue, rather than wait until after the Court entered a final scheduling

---

[2] Penn Treaty has opened the door to the events that transpired at the settlement conference—generally confidential-- by attempting to justify its inexcusable delay by suggesting that Penn Treaty did not assert the counterclaim earlier because it was otherwise engaged in good faith negotiations. In fact, Penn Treaty's conduct at the settlement conference exhibited bad faith.

4

order that did not contemplate additional claims being asserted or the need for additional fact discovery—which had been completed in October, 2003.

The Proposed Counterclaim

Prior to this motion, Penn Treaty never asserted any counterclaim whatsoever. The counterclaim proposed by Penn Treaty is for alleged breach of contract. However, it is not based upon the alleged "material change in management," as contained in its termination letter of November 5, 2001. Rather, Penn Treaty has now concocted five (5) new bases upon which it seeks to assert a breach of contract counterclaim. When Penn Treaty originally terminated the Agreement on November 5, 2001, it asserted only one alleged breach – a "material change in management." Now, Penn Treaty claims that NHCS:

- Failed to manage the development of fulfillment packages;
- Failed to develop Program logistics;
- Failed to develop a provider network;
- Failed to maintain a toll free customer services number; and
- Involved Michael Callahan in the management of NHCS.

See proposed counterclaim, ¶4. Despite its attempt to mislead the Court, Penn Treaty's true motivations are readily apparent.

The sole item of damages sought by Penn Treaty for these alleged breaches is "attorneys' fees and costs." See proposed Counterclaim, ¶7. [3] The alleged breaches of which Penn Treaty now complain should have been asserted long ago, and Penn Treaty provides no credible reason for its delay. Moreover, allowing Penn Treaty to assert a claim at this late stage of the

---

[3] NHCS does not concede that Penn Treaty would be entitled to recover fees and costs under the terms of the Agreement in the event it even prevailed on its proposed counterclaim. Moreover, even if applicable, Penn Treaty

5

proceedings would result in extreme prejudice to NHCS as fact discovery has already closed and a schedule for the remainder of the case has been entered by the Court.[4] Finally, the amendment would be futile and Penn Treaty is equitably estopped from asserting that NHCS breached the Agreement in any other manner except for that set forth in its November 5, 2001 letter.

In light of the dilatory nature of Penn Treaty's motion, the prejudice that would flow in the event it was to be granted, the significant increase in costs if the amendment is permitted, and the application of estoppel, this Court should deny Penn Treaty's motion to amend answer to add a counterclaim.

---

could only make a claim for fees and costs going forward, and not on a retroactive basis which it apparently seeks to do.

[4] The only way to even remotely avoid substantial prejudice would be to re-open fact discovery for a period of at least nine (9) months, so as to allow NHCS to fully investigate and defend itself against these new claims. However, this Court need not reopen discovery and should deny the motion in its discretion because Penn Treaty fails to meet any of the elements for leave to amend at this late date and the motion has been brought in bad faith.

## **ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading has been filed, a party may amend his pleading only by leave of court or by written consent of the adverse party. Where, as here, NHCS does not consent to the addition of Penn Treaty's proposed breach of contract claim, Penn Treaty must obtain the leave of Court to file its counterclaim. See Federal Rule of Civil Procedure 15(a).

Leave to amend is not absolute. In exercising their discretion, federal courts will deny leave to amend where, as here, Penn Treaty has engaged in undue delay and will prejudice NHCS in filing the proposed amendment, and where the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (court may deny a motion to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ."); Acosta-Mestre v. Hilton Int'l of Puerto Rico, 156 F.3d 49, 52-53 (1st Cir. 1998) (undue delay in seeking amendment may be a sufficient basis for denying leave to amend, especially when allowing the amendment will cause further delay in the proceedings); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility.") (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994) (valid reason for denial is untimeliness); Avatar Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314, 320 (5th Cir. 1991) (while freely given, leave is not automatic and if denial is based on sufficient circumstances—such as untimeliness and futility—it is within court's discretion to deny leave).

A.      **Leave to Amend Must Be Denied Due to Penn Treaty's Undue Delay.**

The original Complaint in this matter was filed almost three years ago, and Penn Treaty has <u>never</u> asserted any counterclaims. Courts of Appeal consistently have affirmed denials of motions for leave to amend where actions have been pending for similar or less time based on the sheer delay in amending and the <u>per se</u> prejudice involved. <u>See, e.g.</u>, <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 686 (2d Cir. 1995) (entirely reasonable for district court to deny leave to file amended complaint filed more than two years after action commenced); <u>Jones v. Childers</u>, 18 F.3d 899, 909 (11th Cir. 1994) (court properly found undue delay when plaintiff moved to add affirmative defense four years after complaint filed); <u>Johnson v. Methodist Medical Center of Illinois</u>, 10 F.3d 1300, 1304 (7th Cir. 1993) (upholding district court's denial of motion for leave to amend Complaint four years after initiation of action), <u>cert. denied</u>, 511 U.S. 1107, 114 S. Ct. 2102 (1994); <u>see also</u> <u>Thompson v. Boggs</u>, 33 F.3d 847, 853 (7th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1063, 115 S.Ct. 1692 (1995) (it is within the court's discretion to deny leave because of delay). Moreover, federal courts have held that at some point the delay becomes procedurally fatal and the moving party must show that the delay was due to oversight, inadvertence, or excusable neglect in order to warrant leave to amend. <u>See, e.g.</u>, <u>Whitaker v. City of Houston</u>, 963 F.2d 831, 836 (5th Cir. 1992).

As the Court of Appeals for the Seventh Circuit has observed, "[t]here must be a point at which a [party] makes a commitment to the theory of its case." <u>Johnson</u>, 10 F.3d at 1304. This motion for leave to amend does not seek to amplify existing claims, assert alternative theories or even amend its affirmative defenses. Rather, Penn Treaty seeks to file a completely new counterclaim, a completely new cause of action. During the past 3 years, Penn Treaty has conducted ample discovery, and has been aware since the inception of this case of the issues

involved. Given that the termination of the Agreement by Penn Treaty was for a single specified breach, it cannot credibly argue that it was unaware of the numerous other claims that it now seeks to assert. The conduct that Penn Treaty alleges would all have occurred prior to its terminating the Agreement. Penn Treaty fails to act in good faith when it comes to this Court seeking to add a claim for the recovery of fees and costs under the guise of a counterclaim.

Moreover, Penn Treaty has offered no explanation for the delay, which this Court has held further warrants denial of Penn Treaty's motion for leave to amend. See Pessima v. Wagner, No. CIV. A. 97-1572, 1999 WL 788594, at *3 (E.D. Pa. Oct. 5, 1999) (denying plaintiff's motion for leave to amend based on undue delay of more than two years and failure to explain the reasons for his delay) (citing Rashid v. Monteverde & Hemphill, No. 95-2449, 1997 WL 360922, at *10 (E.D. Pa. June 24, 1997) (stating that "[a] court may deny a motion to amend based on undue delay when the movant is unable to 'satisfactorily explain' the reasons for delay")), aff'd, 149 F.3d 1165 (3d Cir. 1998).

Penn Treaty speciously argues that it only delayed bringing this motion because it was hopeful that the parties would come to a resolution. See Penn Treaty's Memorandum of Law, p. 3. To make this argument is the height of hypocrisy. Penn Treaty has never formally offered one dollar to settle this matter. It is disingenuous for Penn Treaty to suggest its delay in seeking leave of Court was due to its hope for an amicable resolution, when it conducted itself in the opposite manner. Moreover, the first settlement conference with Judge Caracappa was in August, 2004, which does not explain or excuse the other 2 ½ years of delay.

9

**B.     Penn Treaty's Proposed Amendment Will Result in Prejudice to NHCS.**

Courts deny leave to amend where, as here, the proposed amendment will result in prejudice to NHCS. In determining prejudice, federal courts evaluate factors such as whether the amendment will require the non-moving party to expend significant additional resources, whether the amendment will further delay the disposition of the case, and whether the delay in amending prejudiced the non-moving party. See Burlington, 114 F. 3d at 1434; Johnson v. Methodist Medical Ctr., 10 F.3d 1300, 1303 (7th Cir. 1993), cert. denied, 511 U.S. 1107, 114 S. Ct. 2102 (1994) (leave denied when amended complaint filed four years after commencement of suit would surprise defendant, would result in additional discovery, and would require defendant to be involved in new contest with new issues rather than be granted summary judgment); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (in determining prejudice, court considers whether opponent is required to expend significant additional resources, amendment will significantly delay disposition of case, or plaintiff would be prevented from bringing timely claim in another jurisdiction); Creswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (court plainly had discretion to deny leave to amend when inordinate delay—17 months after commencement, six months after second amendment, and one month after responding to summary judgment motion—resulted in prejudice to defendant). The Court of Appeals for the Third Circuit has stated that "'prejudice to the nonmoving party is the touchstone for the denial of an amendment.'" Lorenz v. CSX Corp., 1 F.3d 1406, 1412 (3d Cir. 1993) (quoting Cornell & Co. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). Moreover, the Third Circuit has recognized that, "at some point, the delay will become 'undue', placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair

burden on the opposing party." <u>Adams v. Gould Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984), <u>cert. denied</u>, 469 U.S. 1122 (1985).

Fact discovery in this matter closed in October 2003. Now, 15 months after the close of discovery, Penn Treaty seeks to assert claims based on conduct that has never been at issue in this case. The only basis upon which Penn Treaty purported to terminate the Agreement in 2001 was a "material change in management." Penn Treaty has never asserted that NHCS failed to: (1) develop fulfillment packages; (2) develop Program logistics; (3) develop a provider network; or (4) maintain a toll free customer service number. Rather than fairly defend its termination of the Agreement on the sole basis asserted, Penn Treaty at the 13th hour seeks to place NHCS' entire performance at issue. In order to now defend itself against each of these claims, NHCS would be required to undertake a new wave of discovery, all witnesses will need to be re-deposed and written discovery in the form of interrogatories and document requests would need to be propounded. This unnecessary and wasteful undertaking would be an enormous financial burden upon NHCS which Penn Treaty has already effectively destroyed. Absent the re-opening of discovery, NHCS would suffer significant prejudice in never having been given the opportunity to fully investigate the factual basis for Penn Treaty's claims. Such prejudice and expenditure of additional significant expense is more than sufficient reason to deny Penn Treaty's motion.

Furthermore, this Court has already expended significant resources in considering the parties' respective motions for summary judgment. Allowing Penn Treaty to add a counterclaim would reverse the procedural posture of the case, potentially resulting in additional dispositive motions and further delaying trial. The Court should not grant a litigation "do over" and allow Penn Treaty to hinder the resolution of this already old case.

11

Penn Treaty has also brazenly claimed in footnote number 3 that in the event it is successful and cannot collect attorney's fees from NHCS, it will attempt to proceed directly against NHCS's shareholders. See Memorandum of Law, p.3, n.3. Amazingly, Penn Treaty makes this assertion with full knowledge that the individuals listed (Neal Forman and Michael Callahan) are not parties to this action, and no cause of action that would permit the imposition of individual liability has ever been asserted. It can only be asserted for its in terrorem effect. Penn Treaty makes arguments to the Court with little regard for the facts or law.

The prejudice that would flow from allowing Penn Treaty's counterclaim justifies the denial of its motion.

C.  **Even Assuming, Arguendo, that Penn Treaty Is Not Barred from Asserting Its Counterclaim for All of the Above Reasons, Its Proposed Claim Is Futile and in Bad Faith, Therefore, Penn Treaty Should Not Be Granted Leave to File Its Counterclaim.**

Federal courts also deny leave to amend where, as here, the proposed amendments would be futile or are in bad faith. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (court may deny a motion to amend because of futility of amendment); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility.") (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994) (valid reason for denial is futility); Avatar Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314, 320 (5th Cir. 1991) (while freely given, leave is not automatic and if denial is based on sufficient circumstances – such as futility – it is within court's discretion to deny leave). The Court of Appeals for the Third Circuit has determined that "futility" means that the pleading, as amended, would fail to state a claim upon which relief

12

could be granted. See Burlington, 114 F.3d at 1434 (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 Moore's Federal Practice ¶ 15.08[4] at 15-81)). In assessing "futility," the district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). Glassman, 90 F.3d at 623 (citing 3 Moore's at ¶ 15.08[4], at 15-81). Under this standard, the Court should refuse to allow Penn Treaty's Counterclaim because the proposed claim would be futile and would not survive a motion to dismiss. See Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984), cert. denied, 469 U.S. 1122 (1985).

On November 5, 2001, Penn Treaty purported to terminate the Agreement, and attempted to justify its actions as follows:

> In light of the material change in the management of National Healthcare Services, Inc., Penn Treaty is left with no choice but to immediately and without any further notice terminate the Agreement entered into between National Healthcare Services, Inc. and Penn Treaty Network America Insurance Company dated October 21, 1999, and the modification of the Agreement dated August 21, 2000.

See Amended Complaint, Exhibit "J". No other reason was provided by Penn Treaty in its termination notice.

"It is a firmly established principle, founded in the doctrine of equitable estoppel, that a refusal to perform the obligations of a contract on the ground of a specific breach assigned as the reason for such refusal, constitutes a waiver of all other breaches then known to him; where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his mind, to the detriment and disadvantage of the other party, and seek to justify his action by advancing some other reason." Warner Co. v. MacMullen, 112 A.2d 74 (Pa. 1955); see also Elfant v. Claus, 177 A.2d 153 (Pa. Super. 1962).

13

Penn Treaty made the decision to terminate the Agreement for the sole reason set forth in its November 5, 2001 letter – "a material change in management." No other reason was given by Penn Treaty, and it may not now seek years later to justify its conduct by asserting a panoply of new reasons beyond that already given. Penn Treaty is thereby estopped from asserting that NHCS breached the Agreement in any other manner except that contained in its November 5, 2001 letter. As such, allowing Penn Treaty to assert a Counterclaim would be futile, and thus, its motion must be denied.

The proposed counterclaim based upon NHCS' alleged material breach of the Agreement is also futile because it fails to state a claim upon which relief can be granted. Pursuant to Paragraph 6.2.2, the Agreement could only be terminated, "…[b]y either party **thirty (30) days following written notice** to the other party that the other party has **breached any material duty or obligation under this Agreement, provided that such breach remains uncured** at the expiration of thirty (30) days after such notice…" In order to state a <u>prima</u> <u>facie</u> claim for breach of contract in the counterclaim, Penn Treaty would be required to allege compliance with this written notice provision and NHCS' failure to cure within thirty (30) days of such notice. <u>Pierce v. Montgomery County Opportunity Board</u>, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (To maintain cause of action, the complaint must allege (1) the existence of a valid and binding contract, (2) **that Plaintiff has complied with the contract and performed her own obligations under it**, (3) **fulfillment with all conditions precedent**, (4) a breach of the contract, and (5) damages to plaintiff). Insofar as Penn Treaty has not and cannot allege that it provided written notice of any breach whatsoever to NHCS, as required under the Agreement, or that NHCS failed to cure any such alleged breach within thirty (30) days, both conditions precedent, the claim will be subject to dismissal upon motion to dismiss, if it is permitted to be filed. As

14

such, the proposed counterclaim for breach of contract is futile and leave to amend should not be granted for this reason as well.

Penn Treaty's tardily proposed counterclaim also flies in the face of earlier representations and judicial admissions made to this Court by Penn Treaty that the only basis for its termination of the Agreement was an alleged "material change in management", not the proposed panoply of post hoc justifications they now seek to foist upon NHCS and interject into this action. See, Penn Treaty's Memorandum of Law in Support of Motion for Summary Judgment, dated 12/22/03 ("**First, the undisputed record evidence demonstrates that in terminating the contract, Penn Treaty acted pursuant to a clear contractual provision permitting termination without notice where there was a 'material change in management'**", pp. 2-3; "**Penn Treaty terminated the Agreement by letter, dated November 5, 2001, citing the material change in management as the grounds for termination.**", p. 11; "**Accordingly, Penn Treaty exercised its clear, unambiguous, contractual right expressly provided for in the Agreement to terminate the Agreement due to a material change in management of National Healthcare.**" P. 21). Indeed, in denying NHCS' motion for summary judgment as to liability, this Court acknowledged the limited factual context regarding Penn Treaty's termination premised exclusively upon an alleged material change in management. The Court observed: "[a]lthough there are not many facts in dispute, the context of those facts are very much in dispute." Order dated 3/02/02. Penn Treaty's attempt to amend its answer to add a counterclaim to assert a multitude of newly minted "facts" that, even if true, were known to Penn Treaty at the time of the termination, smacks of bad faith. Penn Treaty's bad faith, lack of candor and judicial estoppel in its statements to the Court constitutes another reason the motion to amend should be denied.

## CONCLUSION

Penn Treaty has engaged in undue delay, without explanation, of almost 3 years in failing to assert its counterclaim. In addition, its proposed counterclaim is futile, in bad faith, would prejudice NHCS and significantly increase the costs of this action and delay trial. For all of the foregoing reasons, Penn Treaty's motion to amend answer to add counterclaim should be denied. In the alternative, NHCS requests the Court to reopen all discovery for a period of nine months and to condition such amendment upon Penn Treaty's payment of all legal fees and costs incurred to date in this action by NHCS.

Respectfully submitted,

*/s/ Ronald J. Shaffer*

Ronald J. Shaffer
Stephanie Resnick
**FOX ROTHSCHILD LLP**
2000 Market Street – Tenth Floor
Philadelphia, Pennsylvania 19103-3291
(215) 299-2000

**ATTORNEYS FOR PLAINTIFF,
NATIONAL HEALTHCARE SERVICES, INC.**

**DATED:**   January 21, 2005

16

## CERTIFICATE OF SERVICE

I certify that on the 21st day of January, 2005, the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Amend Answer to Add a Counterclaim was filed electronically and is available for viewing and downloading from the ECF system; and that a copy was served via Untied States First Class Mail, postage pre-paid on the following:

> Mindy J. Spector, Esq.
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153-0119
>
> Martin C. Bryce, Jr., Esq.
> Douglas L. Flitter, Esq.
> Ballard Spahr Andrews & Ingersoll, LLP
> 1735 Market Street, 51st Floor
> Philadelphia, Pennsylvania 19103

_____
Ronald J. Shaffer

**DATED:**   January 21, 2005