UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL HEALTHCARE SERVICES, INC., <br><br>　　　　　　　　　　Plaintiff, <br>　　v. <br><br>PENN TREATY AMERICAN CORPORATION, *et al.*, <br>　　　　　　　　　　Defendants. | CIVIL ACTION <br> NO. 02-CV-3600 |

**REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO AMEND ANSWER AND IN OPPOSITION TO CROSS-
MOTION TO RE-OPEN DISCOVERY AND ASSESS FEES**

Defendants Penn Treaty American Corporation, Penn Treaty Network America Insurance Company ("PTNA"), and Senior Financial Consultants Company (collectively, "Penn Treaty" or "Defendants"), by their undersigned attorneys, respectfully submit this Reply Memorandum of Law in support of their motion, pursuant to FED. R. CIV. P. 15, to amend their Answer to add a counterclaim against National Healthcare Services, Inc. ("Plaintiff" or "NHS") for breach of contract, and in opposition to NHS' cross-motion to re-open discovery for nine months and for fees incurred to date.

**PRELIMINARY STATEMENT**

Rather than deal with the merits of Defendants' motion to amend to add a single counterclaim, Plaintiff accuses Penn Treaty of bad faith and launches into a one-sided recitation of settlement negotiations that are explicitly confidential by Court rule. The reason Plaintiff must resort to such tactics is clear – there is no legitimate basis to oppose Penn Treaty's motion when Plaintiff was clearly on notice of the issues Penn Treaty raises and there is no prejudice to Plaintiff.

First, Plaintiff completely fails to deal with the fact that Penn Treaty's Answer expressly pleads a defense that Plaintiff failed to perform under the contract. Penn Treaty's Eighth Defense states: "Plaintiff's claims are barred by Plaintiff's failure to fulfill its obligations under its contracts with defendants, which preceded and excused any alleged breach by defendants of such contracts." At deposition, Penn Treaty repeatedly questioned Plaintiff's witnesses about these issues asking them about their failures under the relevant contract, and specifically asking them about each and every failure cited in Defendants' amended complaint.[1] Accordingly, the notion that this claim results in any prejudice to Plaintiff – or requires nine months of additional discovery to defend – is simply absurd, particularly given the fact that Plaintiff has failed to identify any specific discovery that it might need. Indeed, because these very issues have been part of the case since its inception, NHS should have already taken any discovery that it could possibly need on these issues.[2]

Second, Plaintiff confuses its own claim for breach of contract based on a purported wrongful termination with Penn Treaty's claim for breach of contract based upon Plaintiff's non-performance. There is no 30 day cure period under the agreement for a claim of breach of contract. Penn Treaty is free to sue for breach, with the attendant attorneys' fees as damages, immediately following any such breach. The contract provides a thirty (30) day cure period with respect to <u>termination</u> on other grounds. Penn Treaty terminated the agreement in accord with

---

[1] See Forman Dep. at 89–93, 192–200, 228–32, Yohai Reply Aff. Ex. G; Schwartz Dep. at 145–54, 163–65, Yohai Reply Aff. Ex. H. References herein to the "Yohai Reply Aff." refer to the Reply Affirmation of David Yohai, submitted in conjunction herewith and incorporated herein by reference.

[2] Plaintiff's request for a nine-month discovery period, combined with Plaintiff's insistence on a longer time frame for the Scheduling Order than that proposed by Penn Treaty, makes clear that Plaintiff has no interest in expediting the trial of this matter.

2

Section 6.3.2 of the contract, dealing with a material change in management, which has no 30 day cure period. Accordingly, there is no relevant 30 day cure period here.

Third, under applicable law, it is a required element of Plaintiff's breach of contract claim that Plaintiff be able to demonstrate its own performance under the contract. Penn Treaty is merely asserting the flip side of that defense in its counterclaim in order to make clear that it will be entitled to fees if it prevails. Moreover, and contrary to Plaintiff's purported "waiver" position, although Plaintiff is once again mixing apples and oranges in their arguments, the contract itself explicitly states that the "parties agree that no ratification after the fact of any violation" of the agreement "shall be construed as a waiver of any of its rights hereunder." Agreement ¶ 8.4. Plaintiff's arguments that amendment is futile, therefore, are meritless.

Fourth, while Plaintiff tries mightily to convince the Court that delay is sufficient to constitute prejudice, this simply is not the law. The ultimate question is whether the delay resulted in any undue prejudice to the other party. Here, because Penn Treaty's defense already included Plaintiff's non-performance of the contact, there is no prejudice. Moreover, Plaintiff's attempt to convince the Court that Penn Treaty acted in bad faith is wholly inappropriate. Plaintiff states that Penn Treaty opened the door to advising the Court about the settlement discussions because it says it acted in good faith. Penn Treaty most certainly acted in good faith, particularly in light of Plaintiff's continued assertion in its own brief that its claim somehow merits a payment of $100 million from Penn Treaty.

Plaintiff's recitation of the settlement discussions – made in wanton disregard of its confidentiality obligations – is completely improper, and should be stricken by the Court. While Penn Treaty does not wish to sink to Plaintiff's level and engage in a "he said, she said" debate with Plaintiff about the attorneys' settlement discussions, NHS' claim that Penn Treaty only

3

became aware of the applicability of the attorneys' fees provision based on the settlement discussions is contradicted by Penn Treaty's initial settlement submission, exchanged prior to the settlement conference, which clearly stated that NHS was contractually liable for attorneys' fees. In any event, it provides no basis under the liberal pleading standards to preclude Penn Treaty from amending in order to do justice as between the parties. Indeed, Penn Treaty could have waited until trial to amend the pleadings to conform to the evidence, but chose to amend at this point in order to provide maximum notice to Plaintiff that the course it was embarking on has consequences for Plaintiff as well as Defendants and may result in the payment of fees and costs to Penn Treaty under the contract.

Accordingly, for all of the foregoing reasons, and in the interests of justice and fairness between the parties, Defendants' motion to amend should be granted and Plaintiffs' cross-motion to re-open discovery for nine months and obtain attorneys' fees for past work should be denied.[3]

## ARGUMENT

### I. NHS' Non-Performance Has Been At Issue From The Beginning Of This Case And Therefore NHS Has Suffered No Undue Prejudice

NHS takes the position that "Penn Treaty seeks to assert claims based on conduct that has never been at issue in this case." (Pl. Br. at 11). This statement is simply not true.

As set forth in Penn Treaty's opening brief, and completely ignored by NHS in its opposition brief, Penn Treaty's original Answer clearly and unequivocally states that "Plaintiff's claims are barred by Plaintiff's failure to fulfill its obligations under its contracts with defendants, which preceded and excused any alleged breach by defendants of such contracts." Yohai Moving Aff. Ex. D. It is these very failures to fulfill its obligations that serve as the basis

---

[3] Indeed, Plaintiff failed even to file a proper cross-motion, by instead simply referencing the cross-motion in its brief. Accordingly, Plaintiff's cross-motion should also be denied on this basis.

4

for Penn Treaty's proposed counterclaim, notwithstanding Plaintiff's argument that NHS' conduct in this respect "has never been at issue in this case." Moreover, Penn Treaty's Answer also included a demand for attorneys' fees, the very damages that Penn Treaty seeks with respect to its proposed counterclaim.[4]

Plaintiff's assertion that the factual issues on which the proposed counterclaim is premised were never at issue in the case is further undermined by the fact that its witnesses were repeatedly questioned regarding the non-performance of their contractual obligations. For example, both Neal Forman and Herb Schwartz, the original principal shareholders in NHS, were deposed at length regarding NHS' obligations under the contract, including the lack of information regarding facilities and the specific discounts available, problems with the toll free-customer service help line, and the failure to manage the development of the fulfillment packages and marketing materials.[5] Indeed, Schwartz testified that "he was aware of delays in folks getting fulfillment kits during the pendency of the AllRisk product" (Schwartz Dep. at 145-47) and Forman admitted that "there were . . . problems in knowing what discounts were available on the program." (Forman Dep. at 90-91). These facts are relevant, and have been from the beginning of the case, because in order to succeed on its breach of contract claim, Plaintiff must show that it "complied with the contract's terms." Wassau Underwriters Ins. Co.

---

[4] NHS states that Penn Treaty is attempting to "mislead the Court" because its "true motivation" for seeking to add the proposed counterclaim is that Penn Treaty seeks its attorneys' fees and costs. (Pl. Br. at 5). In making this statement, NHS apparently ignores the first paragraph of Penn Treaty's moving brief, which unequivocally states that Penn Treaty is asserting the proposed counterclaim for the very purpose of expressly setting forth its basis for attorneys' fees and costs.

[5] See Forman Dep. at 89–93, 192–200, 228–32, Yohai Reply Aff. Ex. G; Schwartz Dep. at 145–54, 163–65, Yohai Reply Aff. Ex. H.

v. Shisler, No. CIV. A. 98-5145, 2000 WL 233236, at *5 (E.D. Pa. Feb. 28, 2000); Gundlach v. Reinstein, 924 F. Supp. 684, 688 (E.D. Pa. 1996).[6]

Under these circumstances, Plaintiff's claim of undue prejudice, which requires Plaintiff to show "undue difficulty in prosecuting a position as a result of a change in tactics or theories,"[7] cannot be taken seriously. Plaintiff states in conclusory fashion that discovery will need to be reopened for nine months because "all witnesses will need to be re-deposed" and because "interrogatories and document requests would need to be propounded" (Pl. Br. at 11), yet fails to identify a single witness that will need to be re-deposed or a single topic on which Plaintiff needs discovery.[8] This utter lack of specificity regarding additional discovery is not surprising, given that the facts concerning Plaintiff's breach were a part of this case from the very beginning. As such, there is no prejudice to Plaintiff that would require denial of the motion. See Dole v. Arco Chemical Co., 921 F.2d 484, 488 (3d Cir. 1990) (finding no prejudice and granting motion to amend complaint where "the proposed amended complaint is based upon facts and circumstances which do not differ significantly from those underlying the . . . original allegations."). Moreover, Penn Treaty is hard-pressed to understand what additional discovery Plaintiff would need, since Plaintiff does not even dispute that the facts concerning Plaintiff's breach are all within Plaintiff's province. As such, Plaintiff's request to re-open fact discovery for nine months should therefore be denied.

---

[6] Indeed, the pattern jury instruction for breach of contract requires that "the party bringing an action on a contract must prove its own performance . . . ." Pennsylvania Suggested Standard Jury Instruction, § 15.22.

[7] Zygmuntowicz v. Hospitality Inv., Inc., 151 F.R.D. 53, at 55 (E.D. Pa. 1993) (citing Merican, Inc. v. Caterpillar Tractor Co., 596 F. Supp. 697, 705 (E.D. Pa. 1984).

[8] Plaintiff's further assertion that in the event the amendment is granted, Penn Treaty should be required to pay "all legal fees incurred to date by NHS" (Pl. Br. at 2) is absurd given that the proposed amendment, if granted, would not involve any additional discovery, and even if discovery were needed, there is absolutely no basis for such an award under Pennsylvania law.

## II. **The Proposed Amendment Is Not Futile**

Plaintiff also argues that the proposed amendment is futile because it fails to state a claim upon which relief could be granted. (Pl. Br. at 12–13). Plaintiff's main argument in this regard is that because Penn Treaty terminated the contract based solely on a "material change in management" of NHS, Penn Treaty is estopped from asserting any other reason for justifying the termination. (Pl. Br. at 14).

This argument, however, confuses the reason for termination with the issue of performance by the Plaintiff. Penn Treaty is asserting a damages claim for breach of contract based on non-performance. It is not arguing that the basis for its termination of the contract has in any way changed. Thus, NHS' estoppel argument is inapplicable to Penn Treaty's breach of contract claim, since Penn Treaty has not in any way changed its position.[9]

For the same reason, NHS' argument that Penn Treaty was obligated to comply with the thirty (30) day notice provision of the contract before asserting its claim for breach of contract is also misplaced. The provision relied upon by NHS with respect to this argument provides that the contract "shall be terminable . . . [b]y either party thirty (30) days following written notice to the other party that the other party has breached any material duty or obligation under this Agreement, provided that such breach remains uncured at the expiration of thirty (30) days after such notice . . ." Yohai Moving Aff. Ex. C. Penn Treaty, however, is not relying on this provision for termination, since this provision on its face only applies where a party seeks to

---

[9] Warner v. MacMullen, 112 A.2d 74, 77–78 (Pa. 1955) and Elfant v. Clauss, 177 A.2d 153, 156 (Pa. Super. 1962), the cases NHS relies upon in support of its estoppel argument, are inapplicable because Penn Treaty is not "changing its mind" or "advancing some other reason" to justify termination.

7

terminate the contract based on the breach. Here, Plaintiff is suing for wrongful termination and Penn Treaty is relying upon a material change in management to support its termination.[10]

Moreover, even if it could be seriously argued that Penn Treaty has somehow changed its position, Plaintiff's estoppel claim would still fail since the contract explicitly prohibits any waiver by conduct. The contract provides "that no ratification after the fact of any violation" of the agreement "by either [party], shall be construed as a waiver of any of its rights hereunder." Yohai Moving Aff. Ex. C, ¶ 8.4. As such, even if Penn Treaty had fundamentally changed its position, which it has not, such a change could not act to waive Penn Treaty's rights under the terms of the contract. See e.g., Giuffrida v. American Family Brands, Inc., No. CIV. A. 96-7062, 1998 WL 196402, at *5 (E.D. Pa. Apr. 23, 1998) (holding that a no-waiver clause barred an affirmative defense of non-reliance); The Mountbatten Surety Co. v. Brunswick Ins. Agency, No. CIV. A. 00-CV-1255, 2001 WL 34371699, at *19 (E.D. Pa. Nov. 13, 2001) (acknowledging that a no-waiver provision can trump various affirmative defenses).

### III. Undue Delay Alone Is Not A Sufficient Basis to Deny The Motion To Amend

Contrary to Plaintiff's position, it is clear that the law favors decisions based on the merits, not on issues such as purported delay and waiver. See Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962) (granting leave to amend because if the "underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."); Dole, 921 F.2d at 486–87 (granting leave to amend to "ensure[] that a particular claim will be decided on the merits rather than on technicalities.");

---

[10] Likewise, NHS' argument that "the proposed counterclaim . . . flies in the face of representations and judicial admissions made to this Court by Penn Treaty that the only basis for its termination of the Agreement was an alleged 'change in management'" (Pl. Br. at 15), also misses the mark, since "change in management" remains the sole basis for Penn Treaty's termination of the contract.

Davis v. Yellow Cab Co., 35 F.R.D. 159, 160–61 (E.D. Pa. 1964) (granting leave to amend because "courts exercise discretion liberally in permitting amendments, so as not to deprive a litigant of a chance to bring his case to trial.").

Indeed, under well established case law, a motion to amend a pleading should not be denied on the basis of "undue delay" unless there is also a showing of undue prejudice. See Hardy v. Reading Area Community College, No. CIV. A. 97-5174, 1999 WL 46582, at *1 (E.D. Pa. Jan. 14, 1999) (granting leave to amend because "mere delay is not by itself enough to justify denial of leave to amend[.] The delay, to become a legal ground for denying a motion to amend, must result in prejudice to the party opposing the amendment, and it is the opposing party's burden to prove that such prejudice will occur."); Builders Square, Inc. v. National Union Fire Ins. Co., No. CIV. A. 95-0164, 1996 WL 571169, at *1 (E.D. Pa. Oct. 3, 1996) (stating that "[m]ere delay does not generally warrant the denial of a motion to amend in the absence of a showing of prejudice."); Zygmuntowicz, 151 F.R.D. at 55 ("mere delay" is an insufficient basis for denying a motion to amend "absent a concomitant showing of undue prejudice."). Consequently, NHS' claim that "leave to amend must be denied due to Penn Treaty's undue delay" (Pl. Br. at 8) is simply a misstatement of the standard governing this motion. As set forth above, NHS has not set forth any undue prejudice that it will be subjected to if the amendment is granted, and therefore, the mere passage of time cannot serve as the sole basis for denial of Penn Treaty's motion to amend.

Moreover, the cases relied upon by NHS do not support its position. First, in Foman, the lead case that Plaintiff cites in its opposition brief, the Supreme Court granted the motion to amend. Foman, 371 U.S. at 182. Second, in Johnson v. Methodist Med. Center, 10 F.3d 1300, 1304 (7th Cir. 1993), heavily relied upon by Plaintiff, four years after filing of the original

9

complaint, plaintiff sought leave to amend her second amended complaint for the sole purpose of mooting a summary judgment motion filed by defendant. Plaintiff argued that the amendment should be granted because defendant would not be prejudiced by the amendment. Id. The Seventh Circuit disagreed, holding that "[w]e do not agree . . . that [Defendant] would not be prejudiced if she is allowed to amend her complaint." Id. Indeed, unlike the amendment proposed in this case, the proposed amendment in Johnson went well "beyond the scope of the" earlier pleading, seeking to add nearly two dozen additional claims for negligence. Id. Similarly, the cases from Third Circuit courts relied upon by Plaintiff are also inapplicable to these facts. See In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1435 (3d Cir. 1993) (reversing in part the decision of the district court to deny leave to re-plead where the court gave no basis for its denial of the motion "because we are hesitant to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings, we believe that the plaintiffs should be afforded an additional, albeit final opportunity, to conform the pleadings") (citation omitted); Pessima v. Wagner, No. CIV. A. 97-1572, 1999 WL 788594, at *2 (E.D. Pa. Oct. 5, 1999) (denying leave to amend to add Janet Reno and other federal officials to a Section 1983 action because "the addition of these defendants would be futile, as any action against them would be barred by the statute of limitations . . .").[11] Plaintiff is clearly stretching to find any case to support its position that leave to amend should not be granted.

---

[11] Similarly, the decisions from other courts relied upon by NHS are equally inapplicable. See, e.g., Acosta-Mestre v. Hilton International, 156 F.3d 49, 52–53 (1st Cir. 1998) (finding that even if undue delay were not in and of itself a sufficient basis for denying amendment of complaint, resulting prejudice to Defendant supported the district court's denial); Zahra v. Town of Southhold, 48 F.3d 674, 686 (2d Cir. 1995)(noting that "the request to amend appears to be futile"); Jones v. Childers, 18 F.3d 899, 909 (11th Cir. 1994) (affirming denial of motion to amend to add affirmative defenses made one week before trial in part because adding "a host of new affirmative defenses . . . would have further complicated an already complex case and likely delayed the trial . . . .").

10

### IV. NHS Violated Rule 408 And Inappropriately Accuses Penn Treaty Of Bad Faith

In direct violation of Rule 408, which provides that "evidence of conduct or statements made in compromise negotiations is . . . not admissible," NHS devotes a substantial portion of its brief to disclosing confidential settlement discussions in an attempt to show Penn Treaty's alleged bad faith. NHS' purported reason for doing so, buried in a footnote in NHS' brief, is that "Penn Treaty has opened the door to the events that transpired at the settlement conference – generally confidential – by attempting to justify its inexcusable delay by suggesting that Penn Treaty did not assert the counterclaim earlier because it was otherwise engaged in good faith negotiations." See Pl. Br. at 4 n.2. This explanation is at best a pretext, given the nature of the reference to settlement negotiations in Penn Treaty's moving brief.[12] As such, Plaintiff has no good explanation for disregarding its confidentiality obligations, and this Court should strike those portions of NHS' brief that refer to the settlement communications. See Foster v. WNYC-TV, No. 88 CIV. 4584, 1989 WL 146277, at *6 (S.D.N.Y. Nov. 20, 1989) (granting motion to strike settlement communications included in exhibits to affirmation, and noting that it would entertain a motion pursuant to Rule 11 on those grounds); Bower v. Stein Eriksen Lodge Owners Assoc., 201 F. Supp. 2d 1134, 1139–40 (D. Utah 2002) (striking letter and portions of affirmation and brief where party attempted to use those materials to show bad faith).[13]

While Penn Treaty does not intend to violate the mandates of Rule 408 by disclosing confidential settlement discussions, Penn Treaty does take issue with the allegations of bad faith in Plaintiff's brief. Indeed, while improperly chastising Penn Treaty for failing to make a

---

[12] The moving brief stated: "Because Defendants were hopeful that the parties could come to some resolution regarding the claims involved in this case without the need for a trial, they did not raise this counterclaim for breach of contract at an earlier date." (Moving Br. at 2).

[13] Penn Treaty is contemplating additional remedial action with respect to NHS' blatantly improper behavior.

"formal" settlement offer – which is false – Plaintiff continues to insist that its claims are worth "in excess of $100,000,000." (Pl. Br. at 3). Moreover, NHS insinuates that Penn Treaty only became aware of the contractual attorneys' fees provision when NHS' attorneys informed Penn Treaty of the existence of that provision during the settlement conference. In fact, Penn Treaty noted its contractual entitlement to attorneys' fees in its initial August 2004 settlement conference submission. There, Penn Treaty stated that "Plaintiff also has significant exposure for attorneys' fees which, under the applicable contract, is awardable to the prevailing party."[14] Accordingly, Plaintiff's entire argument is wrong even if the Court were to consider it.

Additionally, there was nothing improper with respect to Penn Treaty's decision to move at this time for leave to amend its answer. Following the conclusion of settlement discussions, Penn Treaty was faced with the reality that the parties would not resolve this dispute through settlement. Penn Treaty already had in its Answer a request for attorneys' fees. However, Penn Treaty believed that it was in the interests of all the parties to amend its Answer so that there could be no confusion. Moreover, Penn Treaty could have opted to have the Court conform the pleadings to the evidence at the pre-trial stage, but believed the more prudent course of action would be to affirmatively move to amend the pleadings at this time. Penn Treaty did not raise this issue in the Scheduling Order submitted to the Court given that leave of Court was necessary for Penn Treaty to amend its answer, but rather promptly filed this motion. Moreover, because the affirmative claim for breach was merely the flip-side of Penn Treaty's non-performance defense and therefore injected no new issues into the case, the proposed counterclaim has no impact on the Scheduling Order. Indeed, when the parties negotiated the Scheduling Order Stipulation, Plaintiff insisted on a longer time frame than that proposed by Penn Treaty for its

---

[14] In order to maintain the confidentiality of the settlement proceeding – which Plaintiff has flouted – Penn Treaty is not attaching that submission as an exhibit to the Yohai Reply Aff.

expert reports, making it clear that Plaintiff has no desire to try this case and merely seeks to run-up fees and costs. This fact is underscored by Plaintiff's cross-motion to reopen fact discovery for nine months, even though no discovery is necessary. Plaintiff's reference to a nine-month discovery period is merely an attempt to play on this Court's justifiable concern about the need to move this case along. Since the issues raised by the proposed counterclaim have been in this case from its inception, there is no need for any additional discovery – let alone a nine month discovery period. Accordingly, the motion to amend should be granted, given that there is no prejudice to Plaintiff.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Penn Treaty's moving brief, Penn Treaty's motion for leave to amend its Answer to add a counterclaim should be granted, and NHS' request to reopen discovery for nine months and for fees incurred to date should be denied.

Dated: January 25, 2005

*/s/ David Yohai*

Mindy J. Spector
David L. Yohai-Validation of Signature Code: DLY4573

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
(212) 310-8000

-and-

Martin C. Bryce, Jr.
Douglas L. Flitter
BALLARD SPAHR ANDREWS &
   INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
Attorneys for Defendants